FRANCIS B. BREWER, APPELLANT, *v.* JANE E. FORD, RESPONDENT.

*Sale of chattels, the vendor retaining title until notes given therefor are paid — action by the vendor to recover damages for the conversion of the property by the vendee — right to require him, as a condition of a recovery therein, to surrender the notes.*

One Brewer, who, on the 19th day of January, 1880, was the owner of certain personal property, on that day entered into a written agreement with the Clark Manufacturing Company to sell a certain amount of machinery at the agreed price of $9,000, which contract contained this provision: "F. B. Brewer agrees to sell to the Clark Mfg. Co. a certain amount of machinery and all patents pertaining to lock business. * * * Said machinery shall be the property of said Brewer, in care, custody and charge of said Mix Bros., until paid for. The said Brewer agrees to accept in payment of the said patents, as conditioned above, $500 on the first day of April prox.; $500, with interest on the whole amount unpaid, on the first day of April, 1881; $1,000 and interest on the whole amount unpaid on the first day of April thereafter until the whole is paid. Notes to be given for the several amounts. And the aforesaid Clark Manufacturing Company agrees to make the above-described purchase upon the conditions therein set forth and recited."

In April, 1887, the manufacturing company was insolvent and made a general assignment for the benefit of its creditors. At that time three of the notes of $1,000 each remained unpaid, one of them past due and the others to fall due, respectively, in one and two years thereafter.

When the assignment was executed a number of the patents and machines sold under the said contract had been lost, consumed, sold or destroyed, and that which remained was included in the schedule attached to the assignment and was delivered into the possession of the assignee, the defendant.

In an action brought by Brewer to recover of the assignee the damages alleged to have resulted from the alleged conversion of such chattels by said assignee, at the close of the evidence the court held that by the terms of the contract the title to the property remained in the plaintiff, but that he was not entitled to recover in this action the value of the property mentioned unless he unconditionally delivered up the unpaid notes for cancellation.

The plaintiff refused to do so, but offered to place the notes in the hands of the clerk of the court, to remain in his possession for the purpose and with the authority to indorse upon the notes, as payment thereon, such sum as the jury should in a verdict fix as the value of the property, and if the amount was equal to the amount of the goods the notes should be canceled.

*Held,* that the court erred in such holding.

That the claims asserted by the plaintiff, that under the contract he might retain the possession of the property, and at the same time enforce the promise to pay the purchase-price, were not inconsistent. (MACOMBER, J., dissenting.)

That both propositions had their foundation in the agreement, which was in all respects valid as between the parties thereto.

Cases upon this subject collated and considered by BARKER, P. J.

APPEAL by the plaintiff from a judgment recovered at the Erie Circuit, which was entered in the office of the clerk of the county of Erie on the 15th day of December, 1887; and also from an order granted at circuit on the twenty-second day of November, denying the plaintiff's motion for a new trial, and entered in the office of the said clerk of Erie county on the 23d day of November, 1887.

*William C. Fitch,* for the appellant.

*Frank C. Ferguson,* for the respondent.

BARKER, P. J.:

The trial court directed a verdict in the defendant's favor. This I think was error. The plaintiff was the owner of the property in question on the 19th day of January, 1880. On that day, he, by an instrument in writing, agreed to sell the same with other property to the Clark Manufacturing Company, doing business in the city of Buffalo, at the agreed price of $9,000. The purchaser in pursuance of the terms of the agreement, gave its negotiable promissory notes payable on future dates and bearing interest. The contract contained this provision: "F. B. Brewer agrees to sell to the Clark Manufacturing Company, a certain amount of machinery, and all patterns pertaining to lock business. * * * Said machinery shall be the property of said Brewer in care, custody and charge of said Mix Brothers until paid for. The said Brewer agrees to accept in payment for said purchase, as conditioned above, $500 on the first day of April prox.; $500 with interest on the whole amount unpaid on the 1st day of April, 1881; $1,000 and interest on the whole amount unpaid on the 1st day of April thereafter until the whole is

paid. Notes to be given for the several amounts. And the aforesaid Clark Manufacturing Company agrees to make the above described purchase upon the conditions therein set forth and recited. For the faithful performance of the above written contract and agreement, the parties bind themselves," etc. Mix Brothers, referred to in the agreement, were lock-makers, and immediately after the contract was executed they went into the employment of the manufacturing company and were engaged in the use of the machinery in question, which had been delivered to the purchaser. In April, 1887, the manufacturing company was insolvent, and made a general assignment of all its property to the defendant Ford for the benefit of its creditors. At that time three of the notes of $1,000 each remained unpaid, one of them past due and the others would fall due in one and two years thereafter. When the assignment was executed a part of the property and machinery sold under the said contract had been lost, consumed, sold or destroyed, and that which remained was included in the schedule attached to the assignment, and was delivered into the possession of the assignee, the defendant. The value of this portion of the property had greatly depreciated and the proofs tended to show that its market-value was less than the amount of the unpaid notes. Before the commencement of this action the plaintiff demanded the property of the defendant who refused to give up his possession. The plaintiff was the owner of the notes and had them in court during the trial. At the close of the evidence the court held that, by the terms of the contract, the title to the property remained in the plaintiff, but that he was not entitled to recover in this action the value of the property mentioned unless he unconditionally delivered up the unpaid notes for cancellation.

This the plaintiff refused to do, but he offered to place the notes in the hands of the clerk of the court, to remain in his possession for the purpose and with the authority to indorse upon the notes as payment thereon, such sum as the jury should in their verdict fix as the value of the property, and if the amount of the verdict equalled the amount of the notes, the notes should be canceled and delivered to the defendant in this action, or to the Clark Manufacturing Company, or to such person or persons as the court may direct. The court thereupon directed a verdict in the defendant's favor.

By the terms of the agreement, the title did not pass to the vendee, but it was expressly reserved to the vendor until paid for. The contract on the part of the vendor was wholly executory. The words used are " agrees to sell," which excludes all claim that it was a sale *in presenti.* It was lawful for the parties to make an agreement to that effect. It is manifest that the object which the parties had in view was to give the plaintiff security on the property until the purchase-price was fully paid, for it is distinctly stated that the purchaser consented to all the conditions of the the contract for the purpose of securing " the faithful performance of the agreement; " and as if to emphasize that the title to the property was not to pass until paid for, the vendor bound himself in the sum of $500 for the faithful performance of the agreement.

The vendees gave no other security than their promise, and it is reasonable to suppose that the contract was put in the form in which it was executed, that the plaintiff should retain the title as a security for the payment of the purchase-money. The plaintiff in this controversy with the defendant stands on the terms of the agreement as the basis of his right of action, and we must give effect to the intention of the parties as expressed in the contract. It was undoubtedly understood when the agreement was made that the vendee should have the use of the property and machinery in its manufacturing establishment, although no such intention is expressed in the agreement. But such an arrangement was not inconsistent with the condition expressed on the face of the contract, that the title should not pass to the vendee until the notes were all paid. When default was made in the payment of the notes which matured April 3, 1887, the plaintiff had the right to take possession of the property as against his vendee for the purpose of preserving his security and enforcing his right to have the property devoted to the payment of his debt. If he could not retake possession for that purpose, then the security was practically valueless, and the retention of the title in himself was of no avail. The various decisions in this State, as to the character and effect of contracts similar to the one now before us, sustain the proposition above stated.

In *Herring* v. *Hoppock* (15 N. Y., 409) it was determined that one who has bargained for the purchase of a chattel, and agreed to pay therefor at a future day, and has received a delivery under an

agreement that no title should vest in him until payment, acquired no title; and that a creditor of such person, who had levied an execution thereon, was liable to the owner for the conversion of the chattel. This proposition is decisive of the present case, for the defendant occupies exactly the same position as his assignor did at the time he made the assignment. The case of *Ballard* v. *Burgett* (40 N. Y., 314) fully recognized the doctrine stated in the case last cited, and all the subsequent decisions are to the same effect, and the ·following may also be cited : *Cole* v. *Mann* (62 N. Y., 1); *Austin* v. *Dye* (46 id., 500); *Strong* v. *Taylor* (2 Hill, 326); *Harkness* v. *Russell* (118 U. S., 663); *Mott* v. *Havana Bank* (22 Hun, 354); *Sargent* v. *Metcalf* (5 Gray, 306); *Manning* v. *Keenan* (73 N. Y., 45).

In denying the plaintiff's motion for a new trial, which was made before the learned judge who presided at the court, it was admitted that by the terms of the agreement the sale was conditional, and that no title passed to the vendee, and that it remained in the vendor until full payment of the purchase-price, but he expressed the opinion that in default of payment at the time stipulated the vendor had one of two remedies, either of which he might pursue, but not both; that he could sue for the purchase-money unpaid, and if he did so, that would be an election on his part that the title should vest in the vendee at once, or he could bring an action to regain the possession of the property, or to recover its value from the wrong-doer, who may have converted it to his own use, and by so doing would be regarded as having terminated the agreement and canceling the vendee's promise to pay for the property. This view of the legal effect of the contract denies to the vendor the full benefit of his agreement, and deprives him of the right to enforce the vendee's promise to pay for the property, and at the same time retain the title thereto as a security for the performance of the vendee's promise. In other words, the rule as stated would be equivalent to a denial of the validity of such contract.

The right asserted by the plaintiff that, under the contract, he may retain the title to the property, and, at the same time, enforce the vendee's promise to pay the purchase-price, are not inconsistent, and both propositions have their foundation in the agreement, which was, in all respects, lawful as between the parties thereto.

Suppose "A" should agree to sell "B" an article of personal property at a fixed price, which "B" agreed to pay at a future day, under a stipulation that the possession of the property should remain with the vendor, and the title not pass to the vendee until full performance of the buyer's promise to pay for the same. No one would assert, I think, that such an agreement was unlawful, and could not be enforced by a resort to proper legal remedies. The vendor could maintain an action on the vendee's promise to pay, and hold the title to the property, and retain the possession as a security for the payment of the judgment. Such an action would not be inconsistent with the right of the vendor to retain the title and possession until the vendee performed his promise. If it should be held that an action for the purchase-money under such an agreement was inconsistent with the title in him, it would be, in effect, declaring the contract nugatory as to the vendor. So in the case before us, if the plaintiff cannot hold on to the title to the property without canceling the vendee's promise to pay for the same, he is deprived of one of the terms of his contract which is admitted to be lawful in every respect. The case we are considering does not apply to that class of cases where the rule is well settled, that when a contract is induced by a fraud, that fact does not render it void, or prevent the property from passing, but gives the defrauded party a right, on discovering the fraud, to elect whether he will continue to treat the contract as binding, or disaffirm it and resume the possession of the property. In such cases the contract continues in force until the party defrauded has determined by his election to avoid it, and when once rightfully determined it is determined forever. (*Moller* v. *Tuska*, 87 N. Y., 166; *Morris* v. *Rexford*, 18 id., 552; *Powers* v. *Benedict*, 88 id., 605.)

These are the cases cited by the learned counsel for the respondent in support of his position. Where the vendor, by the terms of his contract of bargain and sale, intends that the title shall pass to his vendee, and delivers to him the possession, and seeks thereafter to void the contract and reclaim the possession of his property for the reason that the vendee perpetrated a fraud upon him, he must put the purchaser, before he can recover the property, in the same position that he was before the contract was made, and that requires him, if any portion of the money has been paid, to return it to him.

In that class of cases the vendor proceeds as if no contract was ever made, by reason of the vendee's fraud. If, with knowledge of the fraud, he sues the vendee on the contract of sale, it is an affirmance of the contract, and he cannot thereafter pretend that the contract was void.

There is another class of cases to which the one at bar is nowise allied in principle or circumstance; that is, where there is a bargain and sale of goods and a delivery to the buyer with the express or implied understanding of immediate payment, such a delivery is deemed to be conditional and subject to revocation on the refusal of the purchaser to pay the price. In such a case if the vendor fails to get payment, he may consider the delivery absolute, and rely on the responsibility of the vendee, or he may disaffirm and reclaim his property.

But he cannot do both of these things. The remedies are not concurrent, and the choice between them once being made, the right to follow the other is gone forever. In the language of Judge COM-STOCK, in *Morris* v. *Rexford* (18 N. Y., 557), " the law tolerates no such absurdity as a seizure of goods by a person claiming that he has never sold them; and an action by the same person, founded on the sale and delivery of the same goods, for the recovery of the price. In peculiar circumstances a party may take either one of these courses, but having rightfully made his choice, the right to follow the other is extinct and gone." It will be observed in that class of cases no credit is given, nor any agreement that the title to the property shall remain in the vendor until paid for.

In this case the goods were sold on credit, with the agreement that the title should not pass until the goods were paid for. It is this provision of the contract which distinguishes it from the cases cited in support of the respondent's argument.

Judgment reversed, verdict set aside, new trial granted, with costs to abide event.

DWIGHT, J., concurred.

MACOMBER, J. (dissenting):

The action is trover, brought against this defendant, who is the assignee of a copartnership known as the Clark Manufacturing Company under an assignment for the benefit of creditors.

The plaintiff and the Clark Manufacturing Company, on the 29th day of January, 1880, entered into a written agreement, by which the plaintiff agreed to sell to that company a certain amount of machinery. The agreement and the transfer of the property were to be perfected, by the terms of the contract, on or about the first day of April, thereafter, when any changes which certain persons, known as Mix Brothers, should deem expedient to be made in the choice or character of the machinery or in the prices of the machinery or merchandise, should be made. The contract declared that " said machinery shall be the property of the said Brewer, in care, custody and charge of said Mix Brothers until paid for." Payments were to be made as follows: $500 in cash; $500 and interest on the whole amount unpaid on the 1st day of April, 1881; and $1,000 and interest on the whole amount unpaid on the first day of April in each year thereafter until the whole should be paid. Nine notes were given for part of the purchase-money, three of which were unpaid in the month of April, 1887, and still remain unpaid, and are held by the plaintiff. They are negotiable instruments.

The Clark Manufacturing Company made payments of these several installments up to the month of April, 1887, when on the seventeenth day of that month they made a general assignment of all their property to the defendant for the benefit of their creditors. At that time there remained unpaid three of the said promissory notes of $1,000 each, but only one of them was due at the beginning of this action. A demand having been made upon the defendant by the plaintiff for the possession of the property coming into his hands as such assignee, and the demand having been refused this action was brought to recover the value of all such property, the complaint describing it in detail, and alleging its value to be $5,000.

Upon the trial of the action it appeared that the Mix Brothers, who stood in the relation of custodians of the property for the benefit of both the seller and the purchasers, abandoned the shops of the Clark Manufacturing Company, the property which they had theretofore had in charge remaining with the purchasers. It was sought to be maintained by the counsel for the defendant, that such act on the part of Mix Brothers amounted to a waiver of any condition in the original sale, and that, consequently, the plaintiff

could not maintain this action. Such objection, however, was properly overruled by the learned trial judge, as a question of law, he holding, in substance, that the question was one of fact and should be submitted to the jury, in the event of the case going to the jury on other questions.

The ownership and possession of the three unpaid notes being alleged in the complaint still to be in plaintiff, and such possession being shown at the time of the trial, objection was made by the counsel for the defendant that a recovery could not be had in this action except upon the surrender of such notes. This contention was approved by the trial judge. The plaintiff's counsel, however, refused to surrender the notes to the defendant, and contended that he had the right to the possession of the same, and the right to mantain an action hereafter upon them in case the verdict of the jury in this action should not be adequate to pay the whole amount of the unpaid purchase-price of the property. The court gave the plaintiff's counsel leave to surrender the notes and so maintain this action, but this was declined. The counsel then stated to the court: "We do not make an unconditional offer to surrender these notes, because we think we have a right to proceed in case there is any balance due on these notes after applying the amount that the jury shall find due us, to proceed against the makers for the deficiency."

There is nothing ambiguous in the terms of the original written agreement. It, as a whole, is a plain contract for the conditional sale of personal property, the title to remain in the seller until paid for in pursuance of the terms of commercial paper given at the time of the transfer of the property. But the Clark Manufacturing Company was to have the continuous possession and use of the property so long as they paid the notes as they became due. The defendant, not being deemed a purchaser for value, can have no defense in this action which was not available to his assignors. They having agreed that the title should remain in the plaintiff, were bound thereby until the property was entirely paid for, unless the plaintiff had voluntarily waived the conditional agreement, and by word or act had made it an absolute sale. The transaction occurring in the year 1885, by which the Mix Brothers left the shops of the Clark Manufacturing Company, indicated strongly that it was not the purpose of the plaintiff further to insist upon

retention by himself of the title to the property. But such intention, as manifested by the acts of Mix Brothers, did not present itself as a question of law, but as a question of fact, and, consequently, was rightly disposed of by the court below.

It will be observed, therefore, that this presents a case of election of remedies in a somewhat different light from any that have appeared in the courts of this State. There is a class of cases, many of which are cited in the opinion of the judge at Special Term, on the motion for a new trial, which it is not necessary to cite here, which show, under varying facts and circumstances, a uniformity of decision to the effect that when a party, having the right to avail himself of more than one remedy, takes one of them in the courts, he is precluded thereafter from availing himself of the other. These authorities, however, proceed generally upon the ground that there has been an election of a judicial remedy which is inconsistent with the subsequent remedy which is sought to be obtained growing out of the same transaction. The peculiarity of this case consists in the fact, not that the plaintiff had undertaken, by process of law, to avail himself of the collection of the promissory notes, for he had not done that, but rather that, being in possession of such commercial paper, which was negotiable, he thereby assumed an attitude in this forum so inconsistent with the claim made in this action that the court could not properly permit him to proceed; for, otherwise, the rescission of the original contract, which the beginning of this action necessarily made, would not be a real, but a sham rescission, and an action might still be maintained by the plaintiff or his transferee upon each of these three unpaid notes.

I am of the opinion, therefore, that while the original agreement was a conditional sale only, and not an absolute one, of the personal property, and while the plaintiff had a right, in case of failure to pay according to the terms of the agreement, to possess himself of the property or to maintain trover for its value, yet an active duty was devolved upon him, and that was to restore, before recovering a verdict in this form of action, the negotiable notes which were still outstanding and held by him.

The judgment and order should be affirmed, with costs.

Judgment and order reversed and new trial granted, with costs to appellant to abide the event.