LILLIE J. EARLE, Respondent, v. GEORGE H. ROBINSON, as Trustee, and Others, Appellants, Impleaded with FERDINAND P. EARLE.

91 363
157a 683
91h 363
64ad234
d64ad237

91h　363
65 A.D 412

*Conditional sale — the vendor has no lien for the purchase price — effect of a retaking of the property by the vendor — failure of consideration of bills and notes given therefor — estoppel.*

Where the consideration for which promissory notes were given has failed, there can be no recovery against the maker upon renewal notes which merely include, as a new consideration therefor, the interest due upon old notes and extend the time of payment.

Interest is a mere incident to a debt, and when the debt is destroyed, there is nothing which can draw interest or furnish a consideration.

The extension of the time to pay a debt, which has been extinguished by the act of the creditor, is not a sufficient consideration for a promise to pay the debt.

Where there has been a sale of goods, with the precedent condition that the title shall not pass until full payment of the purchase price, the vendor can have no lien for the purchase money. A person cannot have a lien upon his own goods.

The Legislature has recognized, by the acts chapter 684 of 1893 and chapter 523 of 1895, the fact that no such lien exists in the case of a conditional sale.

Upon the trial of an action brought to restrain the foreclosure of a mortgage executed to George H. Robinson as trustee, it appeared that Ferdinand P. Earle was, in 1893, lessee of the New Netherland Hotel in New York; that he bought, of W. & J. Sloane and of the Phœnix Furniture Company and of the Gorham Company, furniture and other articles required for the hotel; that he gave his notes to the respective vendors for the respective purchase prices, with an agreement that title to the articles was not to pass to him until full payment of the respective notes; that the Phœnix Furniture Company, however, further agreed that if Earle made default and should have then paid certain amounts, the company would return a certain part of the furniture; that Earle failed to pay the notes held by W. & J. Sloane and by the Gorham Company; that thereupon the three creditors demanded new notes, which should be secured by a mortgage upon the lease and furniture of the Normandie Hotel, of which Earle was also proprietor; that he complied with this demand and executed to George H. Robinson, as trustee, the mortgage in question, which provided that it should not affect the securities then held by the creditors; that the new notes executed by Earle exceeded the old notes held by these creditors only by the amount of the interest then due upon the old notes; that the old notes were not surrendered, but that the creditors agreed not to negotiate them; that Earle was dispossessed from the New Netherland Hotel on March 19, 1894, and his interest in that hotel and in the lease of, and personal property in, the Normandie Hotel was sold on executions in favor of other creditors and was purchased by the plaintiff; that Earle soon after defaulted in the payment of the notes given to W. & J. Sloane and to the Phœnix Furniture Company; that these parties retook the property that they had delivered to Earle, and then notified Earle and the plaintiff that they would sell it and give them credit for the proceeds, and that they sold the property to the new lessees of the New Netherland Hotel by a bill of sale, in which they covenanted that they were the sole owners of the property sold, and that they would warrant and defend the sale.

Subsequently George H. Robinson, as trustee, notified the plaintiff of his intention to foreclose his mortgage, and the plaintiff thereupon brought this action to restrain him.

*Held*, that the action was maintainable;

That the consideration for the old notes had failed by virtue of the retaking and sale of the furniture by its owners, and that no consideration, moving to Earle, was shown for the renewal notes;

That the sale of the furniture, in the first instance, was conditional, and that as Earle had made default in paying the notes, he never had title to the property for which they were given;

That the vendors could have no lien upon articles sold under an agreement that the title thereto should not pass until full payment of the purchase price;

That the vendors were at all times the owners of the property, and had estopped themselves from claiming otherwise by selling the property as their own and guaranteeing the title to their vendees, the lessees of the New Netherland Hotel.

APPEAL by the defendants, George H. Robinson, as trustee, and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 14th day of August, 1895, upon the decision of the court rendered after a trial at the New York Special Term.

*George M. Pinney, Jr.,* for the appellants.

*A. J. Dittenhoefer* and *David Gerber,* for the respondent.

VAN BRUNT, P. J.:

There does not seem to be any dispute in regard to the facts upon which the judgment appealed from was founded.

It appears that in the year 1893 the defendant Ferdinand P. Earle, having become the lessee of a hotel in this city, known as the New Netherland, bought of the defendant company, W. & J. Sloane, carpets, hangings, draperies and upholstery for that hotel, which goods were delivered to Earle under an agreement which contained the following provision : " It is hereby agreed that these goods, described as above, are the property of and belong to W. & J. Sloane until paid for in full." Earle gave to W. & J. Sloane certain promissory notes, having considerable periods to run, for the purchase price of said goods.

On the same day the defendant, the Phœnix Furniture Company, sold and delivered to said Earle the furniture for said hotel, and Earle gave to that company, also, his promissory notes in payment therefor, having also considerable periods to run. This furniture was delivered to Earle under an agreement which contained the express provision that the title should not pass to Earle, but should remain in the company until Earle should have paid the said notes and all insurance premiums, and that, in default of payment, the company was to have the right to take possession of said furniture and remove it from the building, and, inasmuch as it might not be possible to sell it as new furniture, it was further agreed that all pay-

FIRST DEPARTMENT, DECEMBER TERM, 1895.        [Vol. 91.

ments made up to the time the property was so taken should belong to the company, and that, if one-half of the purchase price should have been paid by Earle, the Phœnix Company would return one-fourth of the furniture, and that if three-fourths of the purchase price was paid, the company would return to Earle one-half of the furniture, according to the schedule prices, the selection to be made by the company.

Earle also purchased of the defendant, the Gorham Manufacturing Company, the silverware for said hotel, which said company took in payment therefor Earle's promissory notes, secured by chattel mortgage on said silverware.

Earle failed to pay as they became due certain of the notes held by W. & J. Sloane and the Gorham Company. In consequence of such default the three companies demanded that Earle execute and deliver new notes, and that he secure such new notes by a mortgage upon the lease of, and the personal property in, the Hotel Normandie, of which Earle was the proprietor. In compliance with this demand, and for the purpose of securing an extension of time of payment, Earle, on the 15th of January, 1894, executed and delivered to the three companies certain new promissory notes payable to their order. Contemporaneously with the delivery of such new promissory notes to the three companies, Earle executed and delivered to the defendant Robinson, as trustee, as further collateral security for the payment of the notes, a mortgage on the lease of, and the personal property in, the Hotel Normandie. The Normandie mortgage and also the written offer, signed by Earle, pursuant to which the mortgage and the new notes were given, both contained the following provision :

" That none of the present security now held by you (said three corporations) is to be changed in any respect, but that this extension of the terms of payment is in consideration of the payment of one dollar ($1) and the giving of the aforesaid mortgage as further collateral security thereto."

The amount of new notes exceeded the amount of the old notes by the amount of the interest added. At the time of the making and delivery by Earle of the Normandie mortgage and the new notes, none of the old notes were surrendered, as by express agreement the old notes were to be retained by the three companies, but were

not to be negotiated by them, and were not to be surrendered to Earle until the new notes were paid.

The day after the execution of the Normandie mortgage Earle paid $2,000, which was distributed amongst the defendant companies. Earle was dispossessed from the New Netherland Hotel on the 19th of March, 1894. He thereupon confessed judgment to certain creditors, and the plaintiff, under the execution sales which followed, purchased for a nominal consideration the right, title and interest of Earle, both in the New Netherland property and also in the lease and personal property covered by the Normandie mortgage.

On the 5th of April, 1894, Earle made default in paying the first of the new notes, which became due on that day, to W. & J. Sloane and the Phœnix Company. On the sixth of April the Sloane and Phœnix Companies retook the property which they had sold and delivered to Earle, and each sent, both to Earle and the plaintiff, a written notice containing this statement:

"We further notify you that we shall, in due course and within the time allowed by law, sell all of said property so retaken by us for the best price we can obtain, and give you credit for the proceeds of such sale. We shall be pleased to receive any suggestions which you may desire to make regarding the sale of said property as we desire to do in all respects what is best for both parties."

On the 30th of July, 1894, the Phœnix and Sloane Companies sold the chattels which they had thus retaken at private sale to Robert Stafford and H. P. Whittaker, the present lessees of the Netherland, the Phœnix Company realizing $75,000 and the Sloane Company $35,000. A bill of sale of the furniture was executed by the Phœnix Company and purported to grant and convey "all the furniture at present located in the Hotel 'New Netherlands,' now designated as the Hotel Netherland," and contained covenants upon the part of the vendor as follows:

"And said party of the first part does hereby, for itself, its successors and assigns, expressly covenant that said furniture, and the whole thereof, is free and clear of and from all claims, demands, liens and incumbrances of every kind, and that said party of the first part *is the sole and exclusive owner thereof*, free from any demand or claim on the part of any person or persons whatsoever.

"And said party of the first part does hereby, for itself, its suc-

FIRST DEPARTMENT, DECEMBER TERM, 1895.        [Vol. 91.

cessors and assigns, expressly covenant and agree, to and with said parties of the second part, to warrant and defend the sale of the said furniture, and the whole thereof, hereby sold unto the said parties of the second part, their executors, administrators and assigns, against all and every person and persons whomsoever."

A bill of sale with similar covenants was executed by the Sloane Company for the carpets, curtains, drapery, bedding and chairs in said hotel.

Subsequently the trustee of the Normandie mortgage gave notice of an intention to foreclose, sell and dispose of all the property mentioned and included in that mortgage. Whereupon this action was brought to restrain the foreclosure of the mortgage upon the ground that there was nothing due thereon.

The foregoing facts appearing upon the trial, the court held that the mortgage could not be foreclosed; that there was nothing due thereon, and gave judgment for the plaintiff; and from such judgment this appeal is taken.

It is urged upon the part of the appellants that " The vital error of the learned justice is   *   *   *   that he wholly overlooks the circumstances under which the new notes were given by Earle to the three companies. He erroneously assumes that the consideration for the new notes was simply the original purchase price of the property agreed to be sold and delivered by the companies to Earle."

In this it seems to be assumed that if no recovery could be had upon the old notes because the consideration therefor had failed, a recovery could be had upon the new notes because there was incorporated in the new notes the interest upon the amount secured by the old notes and the time for payment extended. This is the only new consideration (if it may be called such) which was incorporated into the new notes. It seems to us that the learned counsel loses sight of the fact that interest is a mere appurtenant to a debt, and when the debt is destroyed there is nothing upon which interest can stand. The extension of time to pay a debt which becomes extinguished by the act of the owner of such debt can never be a sufficient consideration of itself to support a promise to pay the debt. If the position of the learned counsel is correct, then when a note is renewed and interest is added, no matter if the consideration for the first note entirely fails, the renewal note can be enforced. It is

not necessary to cite authorities for the purpose of establishing the proposition that renewal notes, although interest may be added and time extended, are subject in the hands of the original holders to the same defenses as the original debt; and that if by the act of the creditor the debt ceases to be enforcible, such defense is applicable to all renewals or extensions of the time of payment of such debt whether interest is included or not; and when the learned court held that there could be no recovery for the original indebtedness, the structure upon which the whole of this security rested failed, as payment of a collateral can never be enforced where the original debt is extinguished.

The question, therefore, resolves itself into that which was determined by the learned justice below against the appellants. Upon an examination of the case and a consideration of the arguments presented upon this appeal, we think that the learned counsel for the appellants has mistaken the relations existing between these contracting companies and Earle. They are endeavoring to claim rights such as they would have had had they simply a vendor's lien upon goods sold, the title to which had passed to the vendee, but which had never been delivered.

The case of *Van Brocklen* v. *Smeallie* (140 N. Y. 70) describes the vendor's lien as arising under these circumstances: "The vendor of personal property has a lien, or something more than a lien, upon it for the purchase price, while it remains in his possession awaiting delivery, although the right of property has passed to the vendee. * * * The right of the unpaid vendor is deemed sometimes analogous to the pawnee's right of sale, and sometimes to the right of stoppage *in transitu.* Whatever it be, it is at least a lien, upon the property sold, for the purchase price so long as it remains undelivered, which lien the vendor may enforce by a sale, and then recover any balance of the contract price unrealized."

The appellants in this action seek to claim rights such as a person would have who stands in that relation to the transaction. It is a familiar principle that the vendor's lien is gone the moment the property is delivered. The right of stoppage *in transitu* is only exercised where the property can be seized before it reaches the consignee.

FIRST DEPARTMENT, DECEMBER TERM, 1895. [Vol. 91.

It is undoubtedly true that where the vendor's lien exists, the right of the vendor in enforcing the same is three-fold; he may store the property for the buyer and sue for the purchase price; or he may sell the property as agent for the vendee and recover any deficiency resulting; or he may keep the property as his own and recover the difference between the contract price and the market price at the time and place of delivery.

None of these remedies apply to the case at bar or to any conditional sale where the title to the property remains in the vendor. And this is the relation which by express contract existed between the defendant companies and Ferdinand P. Earle. They expressly reserved to themselves the title of this property with the right to take possession of it and to forfeit all payments which had been previously made upon default in the payment of any of these notes. The agreement between the Phœnix Company and Earle was more formal and broad than that between Earle and the Sloane Company. But so far as this question of title was concerned, they amounted to the same thing — that Earle was to get no title to the property until he had paid for it, and it was upon this theory that these companies acted when Earle made default. They took possession of the property and sold it as their own. They guaranteed in the bills of sale to the purchaser that they were the owners. Now, if they had understood that the title had passed to Earle, how could they have given such a guaranty? They understood at that time that they were the owners, not that they had a lien upon the property and were foreclosing that lien. They sold it as owners, having a complete and full title, Earle having no right or interest therein. Under such circumstances, can these defendant companies, after they have asserted the rights given them by the instruments above referred to, which they thought better protected them than a mortgage upon the property, now come into court and be heard to say that all they had was a lien which they foreclosed. It seems to us not. They were not contented with the lien; they wanted to have the right to take this property in default of payment of the last note, even if all the rest had been paid, and of forfeiting all the payments which had previously been made, the Phœnix Company, however, making an agreement that as a certain proportion of the payments were made, Earle should get title to such portion of the

furniture as they might select, according to the schedule prices. It is not at all likely that these companies, in case a large portion of these payments had been made, would have insisted upon their strict legal rights, but they had the power so to do, and it depended entirely upon their charity whether, after a default was made in the payment of the last note, Earle should not lose all that he had paid with the exception of the rights reserved to him by the Phœnix Company's contract.

Now, these companies having taken this property as of their original title, where is there any consideration for the renewal notes which Earle gave? He got nothing except the mere possession of this furniture during this time; he acquired no title or interest therein, and could not until he had paid the notes. He could not call the companies to account as to the manner in which they sold this property. They might have given it away and it would have made no difference to him, because he had no interest whatever in it, having made default in the payment of the notes, and the parties selling the property having exercised their right under the contract to resume possession.

This relation between the vendor and vendee on conditional sales is recognized by the legislation of 1893 and 1895. In 1893, by chapter 684, it was enacted that when articles conditionally sold are retaken by the vendor or his successor in interest, such property sold and retaken shall be retained for thirty days by the person by whom or on whose behalf the same has been so taken, during which time the purchaser or his successor in interest may fulfill such contract of purchase and shall be entitled thereupon to receive such property, and that after the expiration of such time all interest of the purchaser or his successor in interest in the property shall cease. And in 1895, by chapter 523, it was provided that if on the retaking and resale of goods conditionally sold there should be a surplus realized by the vendor, such surplus should be paid to the vendee.

If in conditional sales there is any such thing as a vendor's lien there was absolutely no necessity for such statutes. The statutes were enacted for the purpose of alleviating hardships, such as would have existed in the case at bar had Earle paid all his notes but one, and then unfortunately failed to pay that note, and these companies had retaken the goods in question, forfeited all payments made by

Earle, and sold the goods for much more than was due and pocketed the proceeds. It is urged that had the companies sued on the notes after retaking and selling the property, Earle would simply have had the right to make them account for the value of the property retaken. In other words, he would have had a partial defense by way of counterclaim for the value of the property, and the cases of *Payne* v. *Cutler* (13 Wend. 605); *Spalding* v. *Vandercook* (2 id. 431); *Stacy* v. *Kemp* (97 Mass. 166), are cited to support that proposition. All that these cases decide is that where there is a partial failure of consideration the party may recoup in an action on the promissory note ; and they seem to have no application whatever to a case where the whole original indebtedness is wiped out by the action of the creditor.

It is urged that the case of *Brewer* v. *Ford* (54 Hun, 116 ; 59 id. 17 ; 126 N. Y. 643) is conclusive authority for the proposition that in this State a conditional vendor has, upon the vendee's default, unless there be something to the contrary in the contract between the parties, the right to retake the property and apply its proceeds to the payment of the debt, and may thereafter recover any deficiency from the vendee. Upon an examination of this case we fail to find any such question involved. The plaintiff had sold to the defendant's assignor certain property consisting of machinery, and it was provided in the contract of sale that the machinery should be the property of the plaintiff until paid for. Payment was made by the giving of certain promissory notes. Thereafter certain of the machinery was assigned by the vendee to the defendant assignee and went into his possession ; the plaintiff demanded possession of the same, which was refused and an action of conversion was brought. Upon the trial it was insisted that the action could not be maintained without a surrender of the notes, only one of which had become due and all of which were outstanding ; and it was held that the plaintiff might recover his own property in that action irrespective of where the notes were. In other words, if Earle had parted with the possession of some of this property, the Phœnix and Sloane Companies could retake it upon his making default in the payment of his notes.

It does not seem necessary to say anything further upon the questions involved on this appeal. As has already been stated, the extension of time or the promise to pay the interest which had

accrued upon the old notes, and was incorporated in the new, did not and could not form any independent consideration — such consideration was based upon the validity of the debt represented by the old notes, and when that consideration failed there was nothing left to which interest could attach.

The judgment should be affirmed, with costs.

FOLLETT and PARKER, JJ., concurred.

Judgment affirmed, with costs.