Tufts vs. Brace.

Tufts, Appellant, vs. Brace, Assignee, Respondent.

*May 16 — June 2, 1899.*

*Conditional sales: Election to rescind: Voluntary assignments.*

1. Defendant's assignor purchased a soda-water apparatus under a contract providing that the title should not pass until it was paid for, with the right reserved in the seller to retake and remove the same on default on any instalment. The contract was duly executed and filed. After notice from defendant of the voluntary assignment, that the assignee recognized plaintiff's lien, and that if plaintiff desired to hold his security and not file a claim against the estate it would be satisfactory to him, default having been made in payments of instalments, plaintiff, with the assignee's consent, took possession of the apparatus and removed it out of Wisconsin. Plaintiff filed his claim against the insolvent's estate for the balance due on the contract, which was disallowed. *Held*, that plaintiff intended to and did cancel and rescind the contract.

2. While the contract was not drawn so as to put the vendor to his election between rescission and retaking the property, or enforcing payment, yet he could not, on taking possession, sell such property as his own, or appropriate the same to his own use, without working a rescission of the contract, or having the value of the property applied as payment or part payment of the purchase price.

Appeal from an order of the circuit court for Eau Claire county: James O'Neill, Circuit Judge. *Affirmed.*

*Arthur H. Shoemaker*, for the appellant.

For the respondent there was a brief by *Wickham & Farr*, and oral argument by *James Wickham*.

Cassoday, C. J.    This is an appeal from an order disallowing the plaintiff's claim against the estate of Henry E. Converse, who made a voluntary assignment for the benefit of his creditors to the defendant, *Brace*, December 2, 1897. The circumstances under which the alleged claim arose are in effect as follows:

On May 10, 1897, Converse, residing at Eau Claire, signed a written order on *James W. Tufts*, located at Boston, Mas-

sachusetts, for a soda-water apparatus (described), for $888 and an old soda-water apparatus then owned by Converse; and, upon bill of lading, he thereby agreed to honor a sight draft for fifteen per cent., and to pay the balance in monthly sums as follows: $22, and interest at six per cent. until paid, from date of shipment, for each payment, and for such balance and interest to execute and deliver contract notes of like tenor and form as the one printed on the back thereof, maturing as above set forth, "the delivery of said apparatus, etc., to be conditional upon compliance with the above terms and conditions, and said apparatus to remain the property of *James W. Tufts* until paid for;" and he therein agreed to insure the goods for the amount of such claim,— the loss, if any, payable to *James W. Tufts* as his interest might appear,— and to keep the same insured until all payments should be made. Such order was signed by Converse, and also by *James W. Tufts*, per T. J. Morton. Upon the back of the order and contract was indorsed the form of a note, as indicated, containing a statement to the effect that it was thereby understood and agreed by and between the purchaser and *James W. Tufts* that the title to the above-mentioned property did not pass to the purchaser, and that until all such notes should be paid the title to the property should remain in *James W. Tufts*, who should have the right, in case of nonpayment at maturity of either of such notes, without process of law, to enter and retake immediate possession of the property, wherever it might be, and remove the same. Such cash payment was made and such several notes for the balance of such purchase money were executed by Converse under date of May 29, 1897, and delivered to the plaintiff; and about the same time the goods were shipped to Converse, and the old fountain, said to be of the value of about $200, delivered to the plaintiff. June 26, 1897, such order, so signed by the respective parties, was filed in the office of the city clerk of Eau Claire.

It appears that after the defendant, as assignee, had noti-
fied the plaintiff of the assignment, the plaintiff, under date
of December 23, 1897, wrote to the defendant to the effect
that he had received such notice, also a letter from his agent
to the effect that Converse expected to adjust, and settle up,
and resume business and payments to the plaintiff; that two
of the notes were overdue, but he would defer action until
he heard from the defendant, and would hold Converse on
the apparatus, for which he was secured by "mortgage"
filed in the city clerk's office at Eau Claire.    To that letter
the defendant replied, under date of December 27, 1897,
recognizing such "mortgage" so on file, and stating, in
effect, that he had sold the stock and fixtures, but that the
plaintiff's "mortgage" was not affected by the sale; that if
the plaintiff desired to hold his security, and not file any
claim against the estate, that would be satisfactory to him;
that he could make such arrangement with Converse as he
thought best, as that was a matter outside of the assignment
proceedings, and something which did not concern him.
Thereupon, and on or about January 1, 1898, Converse hav-
ing made default in two of such payments, as mentioned,
the plaintiff took possession of the soda-water apparatus,
with the consent of the defendant, and removed the same to
Boston, Massachusetts.    May 6, 1898, the plaintiff filed with
the clerk of the court in such assignment proceedings his veri-
fied claim for the unpaid balance of $768.04 secured by such
notes.    Thereupon the assignee filed objections to such claim
upon the ground, among other things, that the taking of
the possession and removing the property to Boston, under
the circumstances stated, was a cancellation and rescission
of such sale.    The court so found, and ordered that the ob-
jection to such claim so filed be, and the same was thereby,
sustained, and the claim was thereby disallowed.

From that order the plaintiff appeals.

It is contended, upon the one side, that the written in-

strument in question constituted a conditional sale, to take effect only upon complete payment by the vendee. If such was the fact, still it must be conceded that the writing was "subscribed by the parties," so as to entitle it to be filed with the city clerk, as required by the statute (R. S. 1878, sec. 2317). *W. W. Kimball Co. v. Mellon*, 80 Wis. 133; *S. L. Sheldon Co. v. Mayers*, 81 Wis. 627. True, the plaintiff signed by an agent, but we perceive no reason why that should not be sufficient to satisfy the requirement of the statute. This court has gone so far as to hold that an agent, without written authority, may bind his principal in a contract for the sale of real estate, required to be in writing (R. S. 1878, sec. 2302). *Dodge v. Hopkins*, 14 Wis. 630; *Smith v. Armstrong*, 24 Wis. 446. On the other hand, it is claimed that the stipulation to the effect that the title should so remain in the plaintiff until the purchase-price was all paid was merely by way of security, and, hence, that the transaction was essentially a mortgage.

The stipulation in the agreement that the vendee should keep the goods insured for the amount of the plaintiff's claim, and that in case of loss the same should be payable to him *as his interest might appear*, indicates an expectation that Converse's interest in the property should increase, and that the interest of *Tufts* in the property should decrease, as payments should from time to time be made thereon. As indicated in the statement, the plaintiff claimed before he took possession that he was "secured by a record of the mortgage filed." The defendant replied to the effect that his mortgage on the soda fountain was not affected by the sale, and that, if he desired to hold his security and not file any claim, that would be satisfactory to him. In pursuance of such suggestion the plaintiff took possession of the soda-water apparatus, and removed the same beyond the jurisdiction of the court, and to a distant state. By so doing, we think the court was justified in holding, as it did, that the plaintiff

Tufts vs. Brace.

thereby intended to and did cancel the contract of purchase. This does not mean that the mere act of taking possession, without such understanding and implied agreement, would have had such an effect, since the right to take possession necessarily followed the right to so hold the legal title,— whether as mere security, or by way of enforcing the contract. Besides, the several notes, the form of which was indorsed upon the back of the contract, expressly provided that upon such default the plaintiff might re-enter and immediately take such possession. The right to retake possession under such a contract is well established. *Tufts v. D'Arcambal*, 85 Mich. 185; *Wiggins v. Snow*, 89 Mich. 476; *Ryan v. Wayson*, 108 Mich. 519; *Brewer v. Ford*, 54 Hun, 116, affirmed in 126 N. Y. 643; *Earle v. Robinson*, 91 Hun, 363; *Equitable G. P. Co. v. Potter*, 22 Misc. (N. Y.), 124; *Thomason v. Lewis*, 103 Ala. 426; *Campbell P. P. & Mfg. Co. v. Rockaway P. Co.* 56 N. J. Law, 676. The mere fact of taking such possession, without any such understanding or agreement, has been held not to preclude the vendor from recovering the balance of the purchase price. *Id.* But even in such a case the vendor cannot sell such property as his own, or appropriate the same to his own use, without a rescission of the contract, or having the value of the property applied as payment or part payment of the purchase price. *Brewer v. Ford, supra; Earle v. Robinson, supra.*

It will be observed that in the case at bar the contract did not provide, as many contracts do, that the retaking of the possession should operate as a rescission, or as a forfeiture of any payments made thereon. Of course, a contract may be drawn in such a way as to put the vendor to his election either to rescind the contract and retake the property as his own, or to enforce payment under the contract. *Bailey v. Hervey*, 135 Mass. 172; *Seanor v. McLaughlin*, 165 Pa. St. 150; *Crompton v. Beach*, 62 Conn. 25; *C. Aultman & Co. v. Olson*, 43 Minn. 409; *Holt Mfg. Co. v. Ewing*, 109

Cal. 353; *McRea v. Merrifield*, 48 Ark. 160; *Bensinger S. A. C. R. Co. v. Cain*, 4 Tex. App. Civ. Cas. 499. But this is not that kind of a case. The conclusion of the trial court, however, upon the facts found, appears to have been correct.

*By the Court.*— The order of the circuit court is affirmed.