(65 App. Div. 404.)

### WOODRIFF et al. v. HUNTER.

(Supreme Court, Appellate Division, First Department. November 22, 1901.)

1. PLEADING—COUNTERCLAIM—AFFIRMATIVE OF ISSUE.

Where in action on notes the answer sets up a defense in counterclaim, consisting of new matter, the defendant has the affirmative of the case.

2. COUNTERCLAIM—EVIDENCE.

Defendant being indebted to plaintiff, plaintiff purchased his stock, and it was arranged that defendant should act as plaintiff's agent, he to have a bonus of $5,000, and all the equity there might be in the stock when the plaintiff's claim should be satisfied. Subsequently defendant purchased the stock, giving some cash and several notes; defendant forwarding plaintiff an agreement reciting that the notes were given in consideration of the bill of sale, and that, if default should be made in any of them, they should all be due and payable; but prior thereto plaintiff had from time to time replenished and increased the stock, and taken up some old debts of defendant. There was evidence that at such time plaintiff had refused to allow the $5,000 bonus, on the ground that the indebtedness was not sufficiently reduced. Subsequently receivers were appointed for plaintiff, who granted an extension of defendant's notes; but the latter said nothing about the bonus, lest they might not grant the extension. In an action on the last note given by defendant, plaintiff contended that the writing forwarded at the time of the transfer merged all prior contracts. *Held* that, though the writing raised the presumption that plaintiff did not owe defendant anything, the same was fairly overcome by evidence showing that the bonus was not allowed, and that plaintiff had recognized the claim, and hence a set-off consisting of a claim for the bonus was proper.

3. SAME.

If there were any property turned over at the time of the transfer which it was not plaintiff's duty to turn over on the original agreement, the consideration therefor was the purchase price agreed on at that time, and such excess did not operate as a payment of the bonus.

4. SAME—ACCOUNT STATED.

A contention that the transaction when the stock was transferred amounted to an account stated was without merit; there being no account presented, or any dispute about the account.

Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by John R. Woodriff and another, as executors of Edward S. Jaffray, deceased, against Edward Hunter. From a judgment in favor of defendant, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Roger Foster, for appellants.
S. Livingston Samuels, for respondent.

LAUGHLIN, J. This action was originally brought by the receivers of E. S. Jaffray & Co., a copartnership firm doing busi-

ness in the city of New York, to recover upon two promissory notes made by defendant on the 19th day of April, 1895, and payable to the order of the receivers. The notes were subsequently assigned by the receivers to the executors of one of the partners, who were thereafter substituted as plaintiffs, but the complaint was not amended to show these facts. The answer contains no denial of any of the allegations of the complaint, but sets up a defense and counterclaim, consisting entirely of new matter.

The first error assigned relates to the ruling of the trial court that the defendant had the affirmative, and was entitled to open the case to the jury. This is a substantial right, and to deprive a party thereof is reversible error. Heilbronn v. Herzog, 165 N. Y. 98, 104, 58 N. E. 759; Conselyea v. Swift, 103 N. Y. 604, 9 N. E. 489; Murray v. Insurance Co., 85 N. Y. 236; Millerd v. Thorn, 56 N. Y. 402. It must be decided by the facts of each case, but ordinarily it will be determined by the pleadings themselves. Bank v. Judson, 122 N. Y. 278, 25 N. E. 367. Upon the pleadings as they stood at the opening of the case, the defendant clearly held the affirmative. Defendant's counsel claimed the affirmative, and plaintiffs' counsel suggested that it was necessary for them to show the assignment of the notes to them by the receivers. This fact was thereupon admitted by defendant's counsel. We think this did not shift the affirmative of the issue. Katz v. Kuhn, 9 Daly, 166. No amendment of the complaint was asked for or had. If the complaint had been formally amended, the defendant might have formally amended the answer so as to admit new allegations, and still the affirmative would be with the defendant. Plaintiffs' claim to the affirmative was based, not upon the pleadings, but upon the fact that it would be necessary for them to prove ownership of the notes. It would be too late now to raise the objection that plaintiffs had the affirmative under the pleadings. Brady v. Nally, 151 N. Y. 258, 45 N. E. 547; Frear v. Sweet, 118 N. Y. 454, 23 N. E. 910; Eastwood v. Mining Co., 86 Hun, 91, 34 N. Y. Supp. 196, affirmed in 152 N. Y. 651, 47 N. E. 1106. We therefore conclude that the court did not err in ruling that the defendant had the affirmative.

It appears that on the 24th day of December, 1891, the defendant, who was then doing business at Memphis, Tenn., under the name of Edward Hunter & Co., was indebted to the firm of E. S. Jaffray & Co. for goods sold and delivered in the sum of $30,922, and was also indebted in various amounts to other creditors. Hunter, not being able to meet these obligations, called in E. S. Jaffray & Co., and made an assignment or transfer of all his stock in trade to one T. J. Barchus, in trust to sell and convert the same into cash, and apply the proceeds to pay the claims of E. S. Jaffray & Co. and other specified creditors, and return the balance to him. On the 11th day of January, 1892, the trustee sold this property on sealed bids, and it was purchased by the firm of E. S. Jaffray & Co. for $40,250. They paid the other creditors that portion of the bid which such creditors were entitled to by virtue of the trust agreement, and the trustee transferred the stock of goods to them.

An arrangement was then made by the representative of E. S. Jaffray & Co. by which the defendant was to act as their agent in disposing of the goods. This was a parol contract, and its terms are in controversy. However, there was evidence sufficient to warrant the jury in finding that the agreement was that respondent should conduct the business, and pay off his former indebtedness to E. S. Jaffray & Co., and draw out for his personal expenses $250 per month, and that they would allow him a rebate or bonus of $5,000 when their claims were paid, and transfer to him the equity or what was left of the stock of goods. Their agent, who made the agreement with defendant, and had authority to represent them, testified, among other things:

"I agreed with him [meaning defendant] that he should have a bonus if he reduced his debt down to $5,000; he should have a bonus of $5,000, and all the equity there might be in the stock. * * * I agreed with him originally, before that instrument [referring to a power of attorney which was not accepted, and was abandoned by mutual consent] was drawn, and after the sale of the stock, and after the purchase by Jaffray of the stock, that he should have a rebate of $5,000 if he paid Jaffray,—reduced the debt to $5,000, —and if there was any equity in the stock after paying Jaffray forty-two thousand, or about forty-five thousand, including expenses, that the stock should be transferred to him, and he should have all the equity, and a bonus or rebate of $5,000."

There was evidence not only that E. S. Jaffray & Co. authorized this agreement when made, but also that they ratified it, both expressly and by retaining its fruits.

While the legal effect of the transaction was to transfer the stock of goods to E. S. Jaffray & Co., and to substitute the respondent as their agent, upon a salary, in part definite, and in part contingent upon the profits of the venture, yet the firm of E. S. Jaffray & Co. continued their dealings as if with Edward Hunter & Co. The respondent, although in fact their agent, transacted their business in the name of Edward Hunter & Co. It seems that he forwarded his notes to them from time to time, as requested, and the same were by them placed as collateral to their own notes, and paid by them at maturity. The stock of goods was from time to time replenished. On or before the 31st day of March, 1894, the respondent's former indebtedness to E. S. Jaffray & Co. had been entirely paid, without deduction on account of the $5,000 rebate or bonus; but prior to that time E. S. Jaffray & Co. had forwarded new merchandise to the extent of $20,000, and had advanced $12,000 to take up old debts of respondent, and were liable for debts incurred by respondent as their agent to the amount of $12,000, making an aggregate of $44,000 of investments made by them in the business since their purchase thereof. On that day E. S. Jaffray & Co. executed a bill of sale to the respondent of the stock of goods, for which he paid them $4,000 in cash, and gave 19 or 20 promissory notes, aggregating $40,000, representing the balance of their said claim against the business. At this time the respondent executed and forwarded to E. S. Jaffray & Co. an agreement reciting that said notes were given in con-

sideration of the bill of sale, and whereby the respondent agreed that:

"If default is made in the payment of said promissory notes, or any or either of them, at maturity, then in that event all of said notes then remaining unpaid shall be considered and shall become immediately after such default due and payable, and the owner or owners thereof shall immediately thereafter be at liberty to institute any legal measures for the collection thereof, anything in said notes or either of them to the contrary notwithstanding."

The attestation clause of this agreement indicated that it was intended to be executed under seal, but no seal seems to have been attached. These various notes fell due on different dates, and the sole purpose of the agreement seems to have been to provide that, on default in the payment of one, the others should immediately fall due.

It is claimed on the part of the plaintiffs that during the negotiations, and some days before this transfer to respondent of the goods, he asked to be allowed the $5,000 bonus or rebate, and that they declined to allow it; but respondent, in effect, denies this, and his version of what took place on that subject is that he said to Mr. Haver, one of the partners: "Mr. Haver, are you not going to allow me this rebate on this visit this time?" To which he replied: "Mr. Hunter, you owe us quite a large amount of money. We trust in you, and you can certainly trust us for $5,000." To which he replied: "Certainly, Mr. Haver. I don't see why you don't see it proper to give it to me now." To which Haver replied: "We will after your account is reduced." Evidence was also given to show that from time to time thereafter E. S. Jaffray & Co. recognized their liability to respondent on account of the $5,000 bonus or rebate, and stated that when he reduced his account, and got it down sufficiently, he would be given credit therefor. Although in form an entirely new relation sprang into existence between the parties upon the transfer of the goods to the defendant, yet the method of doing business does not seem to have been changed. Hunter continued to buy goods of E. S. Jaffray & Co., and to make payments from time to time on account thereof, and to execute and deliver to them promissory notes as collateral, but without any settlement from which it could be inferred that the open account, subsequent to March 31, 1894, had merged in the notes. On March 25, 1895, when receivers were appointed for the firm of E. S. Jaffray & Co., the respondent was indebted to them on account, leaving out of consideration his claim on account of this bonus or rebate, in the amount of $22,849.83. At this time the firm held respondent's notes to the amount of $17,000. The evidence is not clear as to whether any of these notes were renewals of any of the $40,000 of notes, but, as already stated, the parties seem to have treated the account as the indebtedness, regardless of the fact that notes had been given in part therefor, and seem to have considered such notes as merely collateral to the account. The respondent called on the

receivers before any of these notes aggregating $17,000 fell due, and informed them that he would not be able to take up the notes at maturity, and asked for an extension. They consented, and the respondent then paid them $849.83, and gave his notes for the balance of the account, $22,000, maturing monthly, and then signed and delivered to them a receipt as follows:

"Received from Messrs. Howard S. Jaffray, A. D. Juillard, and James G. Cannon, receivers of E. S. Jaffray & Co., the following described notes [then follows a description of the notes amounting to $17,000], upon our paying to said receivers our sight draft for $849.83, and delivering to them our new notes [then follows a description of notes amounting to $22,000] to cover our account.                                      Edward Hunter & Co."

Respondent has paid all of these notes except the last two, and this action is brought to recover thereon. At the time of obtaining the extension he said nothing to the receivers about his claim for the $5,000 bonus or rebate, lest they might not grant his request for the extension.

The appellants contend that the writing forwarded by defendant to E. S. Jaffray & Co. at the time of the transfer of the business by them to him merged all prior contracts or negotiations, and operated as a discharge or bar of any claim that he then had against them on account of the $5,000 bonus or rebate. We think otherwise. Their liability to him for the $5,000 was a separate and distinct transaction from the agreement by which he purchased and obtained a transfer of the existing stock of goods held by him as their agent, and gave his notes therefor. The original agreement merely contemplated the transfer to the respondent of the equity, so called, in the business, after payment of the amount which they had put into it. The most that can be claimed from this writing and the execution of the notes is that they raise a presumption that E. S. Jaffray & Co. did not owe the respondent anything at that time. Such legal presumption was subject to explanation, and in this case it was fairly overcome by the evidence showing both that the rebate had not been allowed or the bonus paid, and that they repeatedly thereafter recognized defendant's claim therefor, and promised to allow the same. The doctrine contended for by the appellants resolves itself into this: That if A. purchases a stock of goods of B., and pays therefor in cash or by delivering his promissory notes, A. shall not thereafter be permitted to assert any claim for indebtedness that he had against B. at that time. That is not our understanding of the law. E. S. Jaffray & Co. had, in connection with promising respondent the $5,000, agreed to turn over the equity, so called, in the business, to him. So far as their transfer was in accordance with their original agreement, it could afford no consideration for a discharge or bar of his claim for this bonus or rebate which was really agreed to be given for his services. If the transfer embraced any property which it was not the duty of Jaffray & Co. to turn over to defendant under the original agreement, the consideration

was the purchase price agreed upon, and it could not be said that there was any agreement for a discharge of this claim. It may also be observed that it is not at all clear that the defendant was entitled, under his agreement, to be allowed the $5,000 at the time the transfer occurred. Notwithstanding their formal contracts, which technically fixed their relations first as principal and agent, and then as vendor and vendee, they nevertheless, as between themselves, continued to deal with each other as debtor and creditor; and it was competent for them to place a practical construction on their own agreement, both to the effect that the respondent was entitled to have the existing business and stock transferred to him when he was able to pay or satisfactorily secure the former indebtedness, together with any new investments therein, and also to the effect that the rebate or bonus should not be allowed until the new investments, for expenses, keeping up the stock, and advances, should be reduced to appellants' satisfaction. It is unnecessary to determine whether the rebate was due at the time of the transfer or not; for respondent, according to his evidence, acquiesced in appellants' contention that it should stand until the account was further reduced. They still regarded him as their debtor to a very large amount, and, according to some of the evidence, that was assigned as a reason why the credit should not then be allowed. It can no longer be claimed, however, that the indebtedness has not been sufficiently reduced to entitle respondent to claim this bonus or rebate; for it has all been paid, with the exception of the $5,000.

It is also contended by appellants that the transaction between respondent and the receivers constituted an account stated. This claim is likewise untenable. The transaction did not embrace the essential elements of an account stated. No account was presented, and there was no dispute about the account. Respondent merely wished an extension of time to pay his notes then outstanding, aggregating $17,000; and the receivers granted his request, upon his making a cash payment, and giving notes for the balance of the indebtedness. He does not now dispute the correctness of that account. He claims an offset on an independent agreement. The mere extension of time, in and of itself, would furnish no consideration, if there was originally no consideration, or if the debt had been paid. Earle v. Robinson, 91 Hun, 363, 36 N. Y. Supp. 178. It is not claimed that the receivers lost anything by reason of the extension, or by reason of the respondent's failure to inform them of his claim at that time; nor can we perceive how they could suffer any damage on that account. Our conclusion is, therefore, that this $5,000 claim on the part of respondent against E. S. Jaffray & Co. was an existing offset or counterclaim to the notes in the hands of the receivers, and likewise as against the appellants. The receivers, having a claim against respondent to which he had an offset, could not compel him to pay his obligations and take his pro rata share of the assets of E. S. Jaffray & Co. when distributed. Sickels v. Herold, 15 Misc. Rep. 116, 36 N. Y. Supp. 488; Sickles

v. Same, 149 N. Y. 332, 43 N. E. 852; Stapylton v. Compagnie des Phosphates de France, 31 C. C. A. 383, 83 Fed. 53.

When this case was before the appellate division of the Second department on appeal from a judgment in favor of plaintiff granted on the pleadings (Jaffray v. Hunter, 15 App. Div. 615, 44 N. Y. Supp. 639), the decision of the court that the answer stated a good defense appears from the opinion to have been based on the theory that the respondent's claim for a rebate or bonus operated as a payment of the indebtedness for which these two notes were given, and constituted a defense thereto, and that therefore there was an absence or failure of consideration for the notes in suit. Upon the evidence in this case, we have no doubt that the judgment could be sustained upon that theory as well as upon the one discussed. We have, however, considered it more at length in the other aspect, for the reason that the respondent's claim was submitted to the jury as a counterclaim or offset.

We have examined the exceptions in the case to which attention has been called by appellants, but we find none presenting reversible error or requiring special consideration. It follows that the judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON, J., concur. IN-GRAHAM, J., dissents.