HEINS, Respondent, vs. THOMPSON & FLIETH LUMBER COM-
PANY and others, Appellants.

*April 26—May 15, 1917.*

*Appeal: Exceptions: Filing: Bill of exceptions: Vendor and purchaser
of land: Contracts: Validity: Signature by agent: Statute of
frauds: Specific performance: Breach by vendee: Payment, how
enforced.*

1. Exceptions to the trial court's findings were not filed until after
   the time limited by sec. 2870, Stats.; but a copy thereof marked
   "duplicate" is in the bill of exceptions and the trial court cer-
   tified that the bill contained "the exceptions filed to the find-
   ings." *Held,* that such exceptions must be deemed to have been
   filed by leave under sec. 2831, Stats., and that they are suffi-
   ciently incorporated in the bill of exceptions.
2. In an action by the vendor to enforce specific performance of
   alleged contracts for the purchase of land, the evidence is *held*
   to show that certain defendants dealt with plaintiff in the mat-
   ter not in their individual capacities but on behalf of the de-
   fendant corporation, of which they were officers, and that the
   contracts were not made with them as purchasers but with said
   corporation.
3. A contract for the sale of land which clearly appears from several
   writings considered together satisfies the statute of frauds and
   may be specifically enforced.
4. The signing of such a contract in the name of the vendor by his
   authorized agent is sufficient under sec. 2304, Stats.
5. Where, upon accepting an offer for the sale of lands at a certain
   price, the purchaser directs the vendor to send on formal con-
   tracts and abstracts of title, and after receiving such papers re-
   tains them for months without objection and also makes a pay-
   ment thereon, this is such an acceptance and adoption of the
   contracts as gives them validity although they are signed only
   by the vendor; and such acceptance and assent to the terms of
   the contracts also supplies any previous want of a specific agree-
   ment as to the terms of payment for the land.
6. Where parties competent to contract have made an agreement
   for the purchase and sale of lands which is reasonably certain
   in all its parts and not objectionable for unfairness or inequity,
   the specific performance thereof is a matter of right and not of
   judicial discretion.
7. Where the vendee in a land contract would have a right to compel
   specific performance, the vendor has a like right.
8. The vendor's right to enforce payment of the purchase money
   under a land contract should, as a general rule, be enforced by

sale of the land to satisfy his claim, with a judgment for the deficiency, if any, enforceable by execution, or by a resort to the remedy of strict foreclosure; and unless there are special circumstances showing that such remedies will not fully protect the vendor's right, the court should not render judgment in such form that payment by the vendee might be enforced by a contempt proceeding.

APPEAL from a judgment of the circuit court for Bayfield county: G. N. RISJORD, Circuit Judge. *Reversed, except as to one defendant; modified as to that one.*

Action for specific performance of eight alleged contracts for purchase of land.

The complaint was to this effect: In April, 1913, F. J. Stevenson, as agent for plaintiff, the holder of the legal title to the lands in question (describing the same, consisting of a one-half section) with power to sell the same, negotiated with defendants *Thompson & Flieth Lumber Company, W. H. Flieth,* and *H. G. Flieth,* for the sale thereof to them for $17 per acre, $1 per acre to be paid the first year and the balance in five annual payments with interest at six per cent. per annum, resulting in a written agreement that they should purchase said lands of plaintiff upon such price and terms. Accordingly, plaintiff sent defendants eight contracts duly executed by said agent in duplicate, each set being for one forty, and, at defendants' request, procured abstracts of title to said lands and sent the same to them. Later, *H. G. Flieth,* in defendants' behalf, paid $300 upon the first year's instalment of purchase money. At defendants' request such contracts described M. A. Flieth as the purchaser, who was the wife of *W. H. Flieth.* Plaintiff has always been ready to carry out said contracts on his part, and in May, 1913, duly tendered said contracts to defendants for execution but they refused to execute the same or perform as they had agreed.

The relief prayed for was that defendants should be required to execute the contracts, pay the purchase money which was due thereon and the taxes which became due sub-

sequent to the date of the agreement, and pay costs and disbursements of the action.

The Flieths answered jointly to this effect: In the negotiations with plaintiff, *W. H. Flieth* and *H. G. Flieth* acted on behalf of M. A. Flieth. The $300 was paid in her behalf pending the negotiations. The character of the lands and prospects in regard thereto were falsely represented, inducing such payment and continuance of negotiations. Thereafter, before reaching a conclusion as to the purchase, defendants discovered the facts, refused to go further with the matter and demanded back the $300, which was refused. They further answered counterclaiming for a recovery of the $300 and interest.

Defendant *Thompson & Flieth Lumber Company* answered admitting that *W. H. Flieth, H. G. Flieth,* and M. A. Flieth negotiated with plaintiff through his agent for purchase of the land, denying that any contract resulted or that any negotiations occurred in its behalf and putting in issue material allegations of the complaint.

This was established by evidence: April 8, 1913, the agent mentioned in the complaint, who was conceded to have authority in respect to the matter, wrote *W. H. Flieth* proposing to sell the land in question at the price mentioned in the complaint,—$1 per acre, to be paid for the first year.

April 13, 1913, *Thompson & Flieth Lumber Company,* by *W. H. Flieth,* secretary and treasurer, replied that "I will take up the matter . . . with *H. G. Flieth* and if he wishes to do anything, shall be pleased to advise you without delay."

Three days later the company, by *W. H. Flieth,* further answered Mr. Stevenson's letter: "I have taken this matter up with *Mr. H. G. Flieth* and he advises me to have you get out the necessary papers . . . on the basis of $1 per acre for the first year's payment; but to make the contract separate for each forty so that we can pay them up if we so desire.

You may make them out in the name of M. A. Flieth, sending contracts with abstracts, to the National German-American Bank for collection."

According to the instructions aforesaid, contracts in due form were drawn in duplicate, duly signed on behalf of plaintiff, and sent to *H. G. Flieth* to be executed, and one of each set to be then returned. Such contracts specified the price of the land and terms of payment.

After the contracts were received, *H. G. Flieth,* by mail, sent $300 to apply thereon, saying "Here is $300 on the land we are getting." In a letter written by the company February 6, 1914, it treated the payment as having been made with its money. May 14, 1913, *W. H. Flieth,* by letter, advised Stevenson that *H. G. Flieth* had agreed to cover the $1 initial payment on the lands and that, "as soon as the abstract is received and title looked over, I shall be pleased to send you the contracts properly signed."

August 1, 1913, by letter, Stevenson requested *W. H. Flieth* to send the contracts at once, to which reply was made that he had not had time to take up the matter but hoped to do so without delay.

August 25, 1913, *Thompson & Flieth Lumber Company,* by *W. H. Flieth,* secretary and treasurer, advised Stevenson that the land was "misrepresented to me." "I could not conscientiously recommend it to any of my friends." "If you will kindly return the money we have advanced in the deal we will be pleased to return the papers unexecuted."

There was some conflicting evidence as to whether material misrepresentations were made by Stevenson which induced defendants to go as far as they did with the negotiations and pay the $300, and further evidence that defendants refused, upon plaintiff's demand, to execute and carry out the contracts as he claimed the same were made; that *H. G. Flieth* was the father of *W. H. Flieth,* M. A. Flieth was the latter's wife, *H. G. Flieth* was the president and *W. H. Flieth* the

secretary and treasurer of the company; that they were the active directors and principal stockholders thereof; that they had authority to make such contracts as those in question; that the letter, signed by the company, was written by *W. H. Flieth;* that the eight separate contracts were prepared as requested in the letter written by him; that he made no objection thereto, and that the abstracts were received but not examined. The contracts were dated April 18, 1913. So far as necessary, further reference to evidence found in the record will be made in the opinion.

The court decided: (1) Plaintiff and defendants, April 18, 1913, agreed in writing upon a sale by the former to the latter of the land in question for $5,713.22, $326.51 in cash and the balance payable in five equal, annual instalments with six per cent. interest per annum payable annually, the purchaser to pay taxes levied for 1913, and thereafter. (2) Later, in May, 1913, the defendants paid $300 on the purchase money but thereafter refused to further perform their agreement. (3) Four thousand three hundred eight dollars and forty-one cents for principal and interest is due. (4) There will become due, $1,077.48 April 18, 1917, and a like sum April 18, 1918, with interest on each sum from April 18, 1916, payable annually. (5) There are outstanding tax certificates on the lands for 1913, 1914, and 1915. (6) No false representations were made to defendants of the character mentioned in the complaint.

As conclusions it was held that the *Lumber Company, W. H. Flieth,* and *H. G. Flieth* should, within thirty days after service of notice of the entry of judgment, execute the several land contracts mentioned, or, if the originals could not be produced, execute the copies in lieu thereof filed with the court; that they should be required to pay plaintiff the amount due as found, as aforesaid, with interest from September 6, 1916, pay the balance of the purchase money as the same should become due, and redeem the lands from the

tax liens; that they are not entitled to recover on their counterclaim; and that plaintiffs should recover of them costs.

Judgment was rendered accordingly.

*A. W. MacLeod* of Washburn, for the appellants.

For the respondent there was a brief by *John J. Fisher* of Bayfield, and oral argument by *Mr. Fisher* and by *Mr. Byron H. Stebbins* of Madison.

MARSHALL, J.    The principal point raised by appellants is that the finding that defendants made a contract with plaintiff to purchase the land, as claimed, is not supported by the evidence.

Respondent first replied that exceptions to the findings were not filed within ten days after due service of notice of the entry of judgment as provided by sec. 2870, Stats., and were not incorporated into the bill of exceptions.    No answer is made thereto by appellants' counsel.

The record discloses that notice of the entry of judgment was duly served on the 8th day of November, 1916, and that exceptions to the findings were not filed until seventeen days thereafter.    A copy thereof, marked in pencil, "duplicate," is in the bill of exceptions with pencil marks across the face.    The trial court certified that the bill contained "the exceptions filed to the findings."    We conclude that the paper marked as aforesaid was in the bill when certified and was taken as a copy of the exceptions, and hold that they were sufficiently incorporated in such bill.

The court may allow exceptions to findings to be filed after the time provided by statute.    *Ottillie v. Wœchter,* 33 Wis. 252.    While exceptions filed without leave after the time has expired are of no effect,—*Wis. River Imp. Co. v. Lyons,* 30 Wis. 61,—exceptions not so filed, if found in the record unexplained, are to be regarded as having been filed by leave under sec. 2831, Stats.    *Henrizi v. Kehr,* 90 Wis. 344, 63 N. W. 285; *Killingstad v. Meigs,* 147 Wis. 511, 133 N. W.

632.   So we conclude that the exceptions here were regularly filed and sufficiently incorporated in the bill and that they are sufficiently specific to permit a review thereof without the aid of sec. 2405m, Stats.

We are unable to find any satisfactory evidence of defendants having made contracts with plaintiff as found by the court, but do find quite satisfactory evidence that *Thompson & Flieth Lumber Company* did do so.

The defendants *W. H.* and *H. G. Flieth* do not appear to have dealt with plaintiff in their individual capacities. They were not engaged in dealing in lands but their company, under their administration, was so dealing.   The whole history of the matter indicates that they so dealt in the particular case; that plaintiff's agent so understood the matter and that M. A. Flieth, wife of *W. H. Flieth,* as the fact is, did not have anything to do with the matter; but her name was used to represent the real party,—the corporation.

The first letter on behalf of plaintiff proposing to sell the land, as the statement indicates, was addressed to *W. H. Flieth,* who was the secretary and treasurer of the corporation, and who, naturally, as the fact was, conducted the correspondence on the part of the proposed purchaser.   Such purchaser was plainly indicated by the reply, in the name of the company, that *W. H.,* the secretary, would take the matter up with *H. G.,* the president, and if he wanted to do anything about the matter "I shall be pleased to advise you without delay."   That indicates that the whole subject was left to the president to dictate, which was a natural course if the matter was a corporation enterprise.

There is nothing about the situation up to this point to indicate that *H. G.* was negotiating as a proposed purchaser. That he was not is confirmed by the further letter written in the name of the company to the agent that *H. G.* had directed that the papers be gotten out on the basis of the proposed sale; the name of M. A. Flieth to be used as the executory vendee,

who really had nothing to do with the matter, as before stated. The making out and sending of the contracts and abstracts which later occurred, and assent to the terms thereof, which clearly occurred, supplied any previous want of a specific agreement as to terms of payment for the land.

That the contracts as drawn were agreed to, unmistakably appears by the fact that no objection was made to them, though they were retained for months before the final act occurred refusing to execute them; that, after they were received, $300 of the stipulated down payment was made thereon and that, in the end, the refusal to complete the matter was upon the ground of false representations and that such notice of refusal was conveyed by a letter in the name of the corporation.

The $300 appears to have been sent in a personal letter of *H. G. Flieth,* the president, after the written contracts and abstracts were received by the company, and some time later the secretary excused failure to have the papers executed upon the ground that he had not had time to take the matter up, evidently referring to examining the abstracts. The letter written some time later, in the name of the company by the secretary, declining to carry out the contracts upon the ground of false representation and requesting a return of the $300, is consistent only with the money having been paid by the corporation, regardless of whether it was furnished by *H. G. Flieth* personally. It is significant that the latter spoke of the money as that which "we," evidently referring to the corporation, "have advanced in the deal;" that return of the papers was offered only upon condition of a return of the money; and that in an independent transaction with plaintiff this $300 was treated as corporate property.

The foregoing convinces us, as before indicated, that the contracts claimed to have been made with defendants were not made with them but were, in fact, made with *Thompson*

& *Flieth Lumber Company,* the name of M. A. Flieth being used to stand for that of the company, though without any concern of hers, and that the court should so have found. All of the writings may properly be considered together. If in all a contract in writing clearly appears, which we think is the case, that satisfies the statute of frauds, and all requisites of specific performance. *Curtis L. & L. Co. v. Interior L. Co.* 137 Wis. 341, 118 N. W. 853. There does not appear to be any difficulty as to the terms of the agreement, since the minds of the parties evidently met, as indicated, in the formal written contracts, the name of M. A. Flieth being used, as we have suggested and all understood, to represent the corporation.

The contracts were sufficiently signed on the part of the vendor by his agent. Such is the statute, sec. 2304, Stats. *Dodge v. Hopkins,* 14 Wis. 630; *Smith v. Armstrong,* 24 Wis. 446; *Brown v. Griswold,* 109 Wis. 275, 85 N. W. 363; *Tufts v. Brace,* 103 Wis. 341, 79 N. W. 414. The signature of the vendor to the writing was sufficient to give it validity if the other party accepted and adopted it. *Lowber v. Connit,* 36 Wis. 176. That there was such acceptance and adoption appears by the contracts having been retained without objection for months, the payment made thereon, no objections having been made to the title, and the refusal to perform having been upon the ground of false representation, which, if true, would have constituted good ground for rescission and seems to have been claimed for that purpose.

It follows that, had plaintiff refused to perform upon receiving full payment or being duly tendered the same, the vendee *Lumber Company* could have compelled him to do so by action for specific performance. The right of the vendor, in such case, may be likewise enforced. Their rights are mutual as to remedies. Pomeroy, Contracts (2d ed.) sec. 6; Waterman, Spec. Perf. § 15. This court has so held, as in-

dicated in cases cited by counsel for respondent: *Gates v. Parmly,* 93 Wis. 294, 306, 66 N. W. 253, 67 N. W. 739; *Kipp v. Laun,* 146 Wis. 591, 602, 131 N. W. 418; *Curtis L. & L. Co. v. Interior L. Co.* 137 Wis. 341, 346, 118 N. W. 853. That is the general rule, as indicated in 36 Cyc. 565, notes 49 and 50, though, in practice, payment of the purchase money is, probably, generally enforced by the sale of the land to satisfy the amount due for purchase money and costs, and a judgment for the deficiency, if any, enforceable by execution. 36 Cyc. 566, note 54; *Loveridge v. Shurtz,* 111 Mich. 619, 70 N. W. 132; *Anderson v. Wallace L. & M. Co.* 30 Wash. 147, 70 Pac. 247; *Burger v. Potter,* 32 Ill. 66; *Corbus v. Teed,* 69 Ill. 205. We incline to the view that such is the better practice, or a resort to the remedy by strict foreclosure, which is the ordinary way of enforcing the rights of a vendor under a land contract, especially in absence of some special circumstances showing clearly that such remedies are inadequate to fully protect the vendor's right. Otherwise, in case such relief as was granted here is awarded, without provision limiting enforcement of the requirement to pay, to use of an execution, as in ordinary cases for the enforcement of a money recovery, such enforcement might be by a contempt proceeding contrary to the policy of our system. There is a provision here for an execution; but it seems to be in addition to the positive requirement to pay the amount due. There is no special circumstance warranting such a drastic remedy. So if there should be specific performance as to execution of the contracts, it is thought that justice requires a milder remedy for enforcement of payment of the purchase money.

It may be that relief of the nature of that granted here has been sanctioned in this court but we do not find any instance of the kind. The relief sought in *Gates v. Parmly, supra,* was by strict foreclosure. In *Kipp v. Laun, supra,*

the remedy for collection was by execution, and in *Curtis L. & L. Co. v. Interior L. Co., supra,* there was no provision to enforce collection.

The findings of fact, aside from the one above treated, appear to be sufficiently supported by the evidence and no reason appears why there should not be specific performance decreed as to the real executory vendee executing the contracts.

It is suggested that whether specific performance should be granted in any case of this sort rests in the sound discretion of the court. That is not strictly so. There is no arbitrary judicial power in such a case. The parties being competent to contract, and having made an agreement reasonably certain in all its parts, and not objectionable for unfairness or inequity, there is no room for the exercise of judicial discretion as to whether it should be specifically performed. Such performance is a matter of right. No reason is perceived why that does not apply in this case.

The judgment should be reversed except as to the *Thompson & Flieth Lumber Company,* as to which it should be modified to require the written contracts to be executed by it as sole vendee, and otherwise so as to harmonize therewith, and, further, should be modified to provide for enforcement of payment of the amount adjudged to be due on such contracts up to the time of the re-entry of judgment in the court below, including back taxes, by execution only; but without prejudice to plaintiff proceeding by action to enforce such contracts by strict foreclosure, in lieu of so collecting such amount due, or in case of failure to so collect. The judgment should be for costs against said company and for dismissal as to the other defendants, without costs to either side.

*By the Court.*—The judgment is ordered in accordance with this opinion, and the cause remanded for further proceedings in the court below, as here directed. Plaintiff,

upon filing the record in such court, may, upon ten days' notice to the attorney for the *Thompson & Flieth Lumber Company,* re-enter judgment there in accordance. herewith, the re-entered judgment to include the amount due upon the contracts and amount required to pay the back taxes down to the date of the re-entry. Judgment for costs in this court is to go in defendants' favor for clerk's fees only.