H. E. CARTER, Appellant, v. ALBERT SCHRADER, Appellee.

SPECIFIC PERFORMANCE: Non-Abuse of Discretion. The discretion of the court in refusing specific performance, and in relegating the plaintiff to an action at law, is not abused when it appears that part of the purchase price was represented by mortgages, which the parties *mistakenly* understood *at the time of contracting* were ample security for the deferred payment.

*Appeal from Poweshiek District Court.*—HENRY SILWOLD, Judge.

DECEMBER 19, 1919.

THE petition of appellant, praying specific performance of a contract entered into between himself and the appellee, was dismissed on the merits. Plaintiff and appellant appeals.—*Modified and affirmed*.

*U. M. Reed,* for appellant.

*Hamilton & Beatty,* and *Lewis & Dickson,* for appellee.

SALINGER, J.—I.   Appellees invoke the general rule that

there is a discretion in the decision of a suit for specific performance, and urge that the trial court correctly exercised that discretion in dismissing the petition of plaintiff. Appellant does not challenge the general rule, but contends that the discretion is not an arbitrary, but a sound judicial discretion. We adhere to the general rule, and hold, also, that its application has the limitations which appellant asserts. We agree that specific performance should not be granted unless the contract meets the conscientious approval of the court, and that, if the contract is unconscionable or inequitable, or tainted with any trace of unfairness or fraud, this particular remedy should be denied. *New York Brokerage Co. v. Wharton,* 143 Iowa 61; and see 4 McClain's Digest 3692. We agree that, where the parties are competent to contract, and have made an agreement reasonably certain in all its parts, and one which is not objectionable for unfairness or inequity, specific performance will be granted, as a matter of law and right, and that, in such case there is no room for the exercise of judicial discretion. *Heins v. Thompson & F. Lbr. Co.,* 165 Wis. 563 (163 N. W. 173, 177) ; *Mitchell v. Mutch,* 180 Iowa 1281; *New York Brokerage Co. v. Wharton,* 143 Iowa 61. These limitations are fully discussed in Section 25, of Fry on Specific Performance (2d Ed.). It is there said that there is an observation often made, with regard to the jurisdiction in specific performance, that it is in the discretion of the court; that the meaning of this is not that the court may arbitrarily or capriciously perform one contract and refuse to perform another, but that the court may have regard to the conduct of the plaintiff, and to circumstances outside of the contract itself; and that the mere fact that a valid contract exists is not conclusive in plaintiff's favor; that, in *Clowes v. Higginson,* 1 V. & B. 524, 527, Plumer, V. C., said that, if the defendant can show any circumstances *dehors* and independent of the right which makes it inequitable to interpose for the

purpose of the specific performance, a court of equity, having said information upon that subject, will not interpose. Mr. Fry continues that, while this is so, the circumstances are judged by the court by settled and fixed rules, and that, therefore, it is said to be not an arbitrary or captious, but a judicial discretion (citing *Goring v. Nash,* 3 Atk. 186; *White v. Damon,* 7 Ves. 30, 35; *Buckle v. Mitchell,* 18 Ves. 100, 111; *Revell v. Hussey,* 2 Ball & B. *280, *288). The author continues that hence, also, if the contract has been entered into by a competent party and is not inequitable in its nature and circumstances, specific performance is as much a matter of course, and therefore a matter of right, as are damages (citing *Hall v. Warren,* 9 Ves. 605, 608) ; and that the mere hardship of the result will not affect the discretion of the court (citing *Haywood v. Cope,* 25 Beav. 140, in which latter case the discretion in specific performance will be found fully discussed).

These limitations of the general rule present the not uncommon difficulty of the clear rule which is sometimes difficult of application. We think the fair interpretation of this limitation is that the discretion is purely a judicial one, and, therefore, there is no authority to deny performance merely because the chancellor thinks the contract is disadvantageous, or, in a loose, general sense, inequitable; but that the remedy may rightly be refused even though the fraud, unfairness, or inequity, is not strong enough to set the contract aside on these grounds. Somewhere between these two postulates the limit must lie. If the case of fraud itself is strong enough to warrant dismissal of the bill, there can be no occasion for calling in the discretion. If, on the other hand, it cannot, in any true sense, be said that there is fraud or an unconscionable overreaching, then certainly the dismissal of the complaint would not be the exercise of sound judicial discretion, but an arbitrary decla-

ration that, in the judgment of the court, the defendant was unwise in entering into such a contract.

Another difficulty, peculiar to the case before us, perhaps, is that the dismissal was on the merits. A dismissal because, in the discretion of the court, the particular remedy of specific performance is not available, is necessarily no more than an abatement; it relegates the parties to their remedies at law, and, therefore, where the judgment is strictly based on the exercise of the discretion, it is necessarily not an adjudication as to anything that will be tried out between the parties on the law side. In equity, where no more is said, the dismissal of the petition is a dismissal on the merits. In an equity suit, as in every other, there is a presumption that all decisions are on the merits. Notwithstanding this rule and this presumption, the record, as a whole, satisfies us that nothing but a denial of this particular remedy was intended by the court. The effect of this holding will be adverted to later. For present purposes, we say no more than that it is for us to investigate, and determine whether said discretion has been abused.

II. The parties to this suit traded lands. There was an agreement that, upon certain conditions performed, the plaintiff should be given a deed by the defendant. The defendant refused to make deed; thereupon, this suit was brought to compel him to perform specifically. As said, the trial court refused to decree specific performance. Stripped to its skeleton, the dispute narrows down to the one question, whether the plaintiff had so performed his agreement to turn over to the defendant notes for $7,000, secured by mortgage, as to move the chancellor to grant him specific performance. The evidence shows that both parties believed this mortgage to be good security for the $7,000, and that it has transpired that it is not, and never was, security for anything, because prior mortgages would exhaust the land. The defendant, appellee, contends that the agent em-

ployed by him to conduct these negotiations agreed to take this particular mortgage, and that both the plaintiff and this agent knew, at the time, that the mortgage was worthless, and conspired together to cheat the defendant by foisting a worthless piece of paper upon him as $7,000 of the purchase price. This fraud is denied, and we think the claim that there was such fraud is not sustained by the evidence. But the defendant makes alternative claim that, without reference to this, there was at least an honest mutual mistake as to the quality of this paper, and that a court of equity should not compel specific performance in these circumstances, but should relegate the plaintiff to any remedy that he may have at law. The plaintiff responds that he made no representation as to the quality of this paper; and that is true. He represents further that there is no showing that the makers of the note secured by this mortgage are insolvent, and that, therefore, there is no proof that specific performance will injure the defendant. We have to say that, while it is presumed the makers of the note are solvent, and while there is no evidence that they are insolvent, it is plain that the defendant did not rely upon solvency of the makers of the note; that he was not to be paid part of the purchase price by the surrender of the notes, but that payment was to be made by giving him notes which were fully secured by mortgage. The very fact that he demanded mortgage security proves all this. He should not be compelled to surrender his land on the chance that the payment of the notes which he never agreed to accept, will yield him the full purchase price agreed upon. This is peculiarly a case to be tried out at law; it is one of the exceptional cases wherein the remedy at law is more plastic and plenary than can be given in equity. In a court of law, the plaintiff can say that he is willing to credit the defendant with $7,000 paid; in other words, can put him in the same position as though the mortgage were good, and can

then assert that, even after he, the plaintiff, puts up the equivalent of a good $7,000 mortgage, he is entitled to recover damages because, even then, the land which defendant agreed to deed him, and has not deeded to him, is worth more than the plaintiff agreed to give for the land, a good $7,000 mortgage included. And if he proves that, after he has performed the equivalent of turning over a good $7,000 mortgage, the land which has been refused him is worth more than he agreed to pay for it, he may have verdict for the difference.

We therefore conclude that the trial court rightly exercised its discretion in dismissing the petition. But it is ordered that its judgment shall be no bar to the prosecution of suit at law on part of the plaintiff.—*Modified and affirmed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.