Ash Park, LLC, A Wisconsin Limited Liability
Company, Plaintiff-Respondent,

v.

Alexander & Bishop, Ltd., A Wisconsin
Corporation, Defendant-Appellant.†

Court of Appeals

*No. 2008AP1735. Submitted on briefs January 27, 2009.
—Decided April 7, 2009.*

2009 WI App 71

(Also reported in 767 N.W.2d 614.)

† Petition to review granted 10/20/09.

773

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Valerie L. Bailey-Rihn* of *Quarles & Brady LLP*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *R. George Burnett* and *Patrick M. Blaney* of *Liebmann, Conway, Olejniczak, & Jerry, S.C.*, Green Bay.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. Alexander & Bishop, Ltd., appeals a summary judgment ordering specific performance of a real estate purchase contract. Alexander & Bishop, the proposed purchaser, argues (1) it was inappropriate to grant specific performance as a remedy; (2) there were disputed facts precluding summary judgment; (3) the circuit court should have granted its motion for reconsideration or relief under Wis. Stat. § 806.07;[1] and (4) pre- and postjudgment interest was erroneously calculated based on the purchase price. We reject Alexander & Bishop's arguments and affirm the judgment and order.

## BACKGROUND

¶ 2. Alexander & Bishop contracted to purchase vacant land from Ash Park, LLC, for $6.3 million to develop as commercial property. The accepted offer contained a leasing contingency that allowed Alexander & Bishop to terminate the contract and receive a refund of its $50,000 earnest payment if it could not secure an anchor tenant. The contingency had to be invoked no later than July 20, 2007. Alexander & Bishop could also opt to twice extend the contingency for two-month periods by paying a nonrefundable $25,000 extension fee each time. The extension provision clarified that the periods would end on September 20 and November 20, 2007. Closing was to occur by December 14, 2007.

¶ 3. Alexander & Bishop invoked the leasing contingency in writing on July 20. Rather than requesting a refund, on August 1 Alexander & Bishop executed an agreement to reinstate the contract. The reinstatement agreement made the original $50,000 earnest money

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

nonrefundable and required Alexander & Bishop to deposit a nonrefundable $25,000 extension fee with the escrow agent. Both payments would be applied to the purchase price at closing. The agreement reinstated the contract on its original terms, except as specifically stated, and did not address the length of the extension period. Finally, the reinstatement agreement clarified that the sale included an assignment of an option to purchase an adjacent property.

¶ 4.   On October 9, Alexander & Bishop verbally informed Ash Park that the intended anchor tenant had decided to suspend all store relocations and would therefore not be interested in leasing the property until at least sometime in 2008. Ash Park responded with a letter indicating its willingness to explore options for a new agreement, but threatening the possibility of an action for specific performance. The parties were unable to negotiate a new agreement and Ash Park informed Alexander & Bishop it would prepare for the December 14, 2007 closing.

¶ 5.   The sale failed to close and Ash Park sued Alexander & Bishop. The circuit court granted summary judgment ordering specific performance. The court also awarded Ash Park pre- and postjudgment interest. The court subsequently denied Alexander & Bishop's motion for reconsideration or relief from judgment. Alexander & Bishop appeals.

## DISCUSSION

I. Specific Performance

██

¶ 6.   Alexander & Bishop first argues the circuit court erroneously exercised its discretion by awarding specific performance as a remedy. The parties executed

the Wisconsin Department of Regulation and Licensing's standard form contract, WB-13 Vacant Land Offer to Purchase, which states:

If *Buyer defaults,* Seller may:

(1) sue for specific performance and request the earnest money as partial payment of the purchase price; or

(2) terminate the Offer and have the option to: (a) request the earnest money as liquidated damages; or (b) direct Broker to return the earnest money and have the option to sue for actual damages.

¶ 7. This contract language aside, Alexander & Bishop argues Ash Park, as the property vendor, had an adequate remedy at law for money damages and is therefore not entitled to the equitable remedy of specific performance. Only one of the four cases Alexander & Bishop cites, *Henrikson v. Henrikson,* 143 Wis. 314, 127 N.W. 962 (1910), entailed a property transaction. *Henrikson* is factually distinct, involving a purchaser who requested specific performance of an oral contract where the purchaser had partially performed. Regardless, any general support for Alexander & Bishop's argument found in *Henrikson* is superseded by specific authority from other cases.

¶ 8. In *Heins v. Thompson & Flieth Lumber Company,* 165 Wis. 563, 571, 163 N.W. 173 (1917), the court observed that the purchaser in a real property transaction could compel specific performance, and held "[t]he right of the vendor, in such case, may be likewise enforced. Their rights are mutual as to remedies." Even then, the rule was well established in Wisconsin. *See Kipp v. Laun,* 146 Wis. 591, 602, 131 N.W. 418 (1911) ("[T]he rule exists that specific performance may be had at the suit of the vendor of land wherein the vendee is

decreed to accept the deed and pay the purchase price."); *Curtis Land & Loan Co. v. Interior Land Co.*, 137 Wis. 341, 346, 118 N.W. 853 (1908); *Gates v. Parmly*, 93 Wis. 294, 306, 66 N.W. 253 (1896) ([T]he vendor may also, by a similar equitable action, enforce the undertaking of the vendee, although the substantial part of his relief is the recovery of money.").

¶ 9. Additionally, our supreme court has consistently rejected the contention that a property vendor may not seek specific performance if it has an adequate remedy at law available. *See Dells Paper & Pulp Co. v. Willow River Lumber Co.*, 170 Wis. 19, 33, 173 N.W. 317 (1919) (citing *Heins*, 165 Wis. at 573) (recognizing the unique "principles applicable to a contract for the sale of lands"); *Kipp*, 146 Wis. at 602; *Curtis Land & Loan*, 137 Wis. at 345. Although the courts have not recently addressed this argument, we have recognized a vendor's right to sue for specific performance, without suggesting there must be no adequate remedy at law. *See Yee v. Guiffre*, 176 Wis. 2d 189, 194 n.3, 499 N.W.2d 926 (Ct. App. 1993) ("Both parties agree that Wisconsin courts recognize that an action for specific performance is among the alternative remedies that may be chosen by a seller . . . ."); *Moritz v. Broadfoot*, 35 Wis. 2d 343, 151 N.W.2d 142 (1967) (affirming the trial court's order for specific performance). Further, WIS. STAT. § 840.03 lists "specific performance of contract" as one of the numerous remedies that may be pursued in a real property action, singly or in combination, "unless the use of a remedy is denied in a specified situation."

¶ 10. Moreover, a circuit court has very little discretion to deny a vendor's request for specific performance. "The parties being competent to contract, and having made an agreement reasonably certain in all its parts, and not objectionable for unfairness or inequity,

there is no room for . . . judicial discretion as to whether it should be specifically performed. Such performance is a matter of right." *Heins*, 165 Wis. at 573. This rule was reaffirmed and quoted in *Anderson v. Onsager*, 155 Wis. 2d 504, 513, 455 N.W.2d 885 (1990), albeit in an action by a purchaser against the vendor. There, the court ruled "specific performance of a contract to sell land should be ordered as a matter of course," unless doing so would be "unfair, unreasonable, or impossible." *Id.* at 512–13. In light of the foregoing, we reject the argument that Ash Park, as the property vendor, was precluded from obtaining specific performance because it was required to pursue a remedy at law for damages. *See generally,* 12 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1145, at 215–20 (interim ed. 2002).

■

¶ 11.  Alexander & Bishop also argues specific performance is an inappropriate remedy because it is unable to pay. Ash Park responds that Alexander & Bishop did not assert an inability to pay during the summary judgment proceedings. The only evidence that Alexander & Bishop cites is a self-serving affidavit by its principal, submitted two months after the summary judgment hearing, in opposition to Ash Park's contempt motion.[2] That affidavit merely asserts Alexander & Bishop cannot obtain financing without a tenant. Alexander & Bishop cites to no evidence of its financial resources or any evidence it applied for and was denied financing. When a party fails to raise an issue of fact at the summary judgment proceedings,

[2] Ash Park moved for contempt, arguing Alexander & Bishop disobeyed the circuit court's order for specific performance. The record on appeal does not reflect whether that motion was decided or is still pending.

they may not do so on appeal. *See Leuchtenberg v. Hoeschler*, 271 Wis. 151, 158–59, 72 N.W.2d 758 (1955); *see also Roseliep v. Herro*, 206 Wis. 256, 264, 239 N.W.2d 413 (1931). Further, the circuit court implicitly concluded Alexander & Bishop had the ability to pay in its oral decision ordering specific performance.

¶ 12.  Alexander & Bishop alternatively argues that if specific performance is ordered against a purchaser, then the actual remedy is an order for judicial sale. Alexander & Bishop's argument, however, relies primarily on cases involving land contracts where the purchaser was in possession of the property. In *Kallenbach v. Lake Publ'ns, Inc.*, 30 Wis. 2d 647, 142 N.W.2d 212 (1966), the court discussed the various remedies available to a land contract vendor. In addressing specific performance, the court stated, "Under this remedy the vendor elects to affirm the contract by having the property auctioned at judicial sale." *Id.* at 651.

¶ 13.  Notably, this sentence was quoted in *Moritz*, which involved a property vendor's action for specific performance of a contract to sell. However, the court was merely quoting that provision for the "affirm the contract" language, observing that a vendor may elect to either accept the breach and sue for damages, or "stand on his [or her] contractual rights and . . . seek specific performance." *Moritz*, 35 Wis. 2d at 349. The ultimate holding in *Moritz* was that the vendor could both retain the earnest money and maintain an action to specifically enforce the contract, despite a liquidated damages clause in the contract. *Id.* at 349–50.

¶ 14.  We are not aware of any contemporary guidance concerning what properly occurs following an order for specific performance in a case such as this. In *Willes v. Smith*, 77 Wis. 81, 85, 45 N.W. 666 (1890), the

court agreed with the vendor's argument that "the vendees were absolutely bound to accept the property and pay the purchase price . . . ." The court stated, "[T]hat the purchasers were absolutely bound to accept the property and pay for it according to the terms of the agreement, we think, is quite clear." *Id.*

¶ 15.   However, the court subsequently addressed the issue in more depth in *Heins*. It noted that while an order for specific performance was "the general rule, . . . in practice, payment of the purchase money is, probably, generally enforced by the sale of the land to satisfy the amount due for purchase money and costs, and a judgment for the deficiency, if any, enforceable by execution." *Heins*, 165 Wis. at 572. The court viewed this as the "better practice," especially in the absence of some special circumstances showing such sale to be inadequate to fully protect the vendor's right.[3] *Id.* Thus, the court determined it was proper to order specific performance of the contract, but improper to include a "positive requirement to pay the amount due[,]" because this "drastic remedy" could lead to "a contempt proceeding contrary to the policy of our system." *Id.*

¶ 16.   Here, the circuit court ordered Alexander & Bishop to "perform pursuant to the terms" of the contract, and further ordered the parties to "take such actions as are necessary to complete the transaction." Thus, because there is no positive requirement to pay the amount due, the court's order complies with *Heins*, regardless of whether there are any "special circumstances" present in this case. Because the matter is not before us, we make no judgment whether Ash Park may properly proceed with its contempt motion.

---

[3] The court also recognized strict foreclosure was a remedy available to a land contract vendor.

## II. Issues of Fact

¶ 17. Alexander & Bishop argues there were material factual issues in dispute, precluding summary judgment. It contends issues existed as to whether the reinstatement agreement became effective, whether the parties waived strict performance of the agreement by their actions, whether Ash Park could provide clear title, and whether Ash Park mitigated its damages. We reject each of these arguments.

¶ 18. Alexander & Bishop asserts there was a factual dispute as to whether the parties had effectively reinstated the contract because Alexander & Bishop failed to deposit the $25,000 extension fee with the escrow agent. The relevant facts, however, are not in dispute. The application of those facts to the contract language is an issue of law, not fact. *McDonald v. McDonald*, 2006 WI App 150, ¶ 7, 294 Wis. 2d 863, 721 N.W.2d 524. The reinstatement agreement provided, in part:

> 1. Buyer shall deposit a $25,000.00 extension fee . . . with . . . (the "Escrow Agent"), by wire transfer upon the execution of this Agreement by the last party to execute it, which Extension Fee shall be non-refundable but applicable to the purchase price at closing.

> 2. Upon the execution hereof by both parties, and the deposit by the Buyer [of] the Extension Fee with the Escrow Agent, the Offer shall be fully reinstated in accordance with its terms, and the $50,000.00 earnest money currently on deposit with the Escrow Agent shall be non-refundable but applicable to the purchase price at closing.

> . . . .

4. This Agreement may be executed in counterparts and may be delivered by fax or e-mail.

¶ 19.   Alexander & Bishop argues that, based on the express language of paragraph 2, the original contract was not reinstated until the $25,000 fee was deposited with the escrow agent. We disagree. Reading paragraph 2 in isolation, Alexander & Bishop's interpretation might be reasonable. But reading the agreement as a whole, paragraph 1 makes it clear that payment of the extension fee was a requirement—not an option. In fact, Alexander & Bishop's attorney conceded in the circuit court that "if there was a failure to deposit, that might be a breach of this agreement to reinstate . . . ."

¶ 20.   We further agree with the circuit court that the email correspondence between the parties confirms that the agreement became effective upon its execution. Alexander & Bishop's attorney emailed Ash Park's attorney on August 1, 2007, stating:

> [A]ttached is the Agreement to Reinstate signed by Peter [(Alexander & Bishop's principal)].
>
> Please sign and email back to me. Upon receipt of your email, Peter will wire the Extension Fee to Absolute Title.
>
> I will mail duplicate originals for you to sign and return one to me.
>
> However, the Agreement will be effective upon your email back to me.

Ash Park then replied to the email with an executed reinstatement agreement.[4]

---

[4] In attempting to negotiate a new agreement in November after the anchor tenant could not be secured, Alexander &

¶ 21. Alexander & Bishop next asserts there was a factual issue concerning whether invoking the leasing contingency on October 8 rather than by September 20 constituted a material breach, and whether the continued negotiations amounted to a waiver of the contingency deadline. Whether a breach is material is, except in clear cases, a question for the jury. *Myrold v. Northern Wis. Coop. Tobacco Pool*, 206 Wis. 244, 249, 239 N.W. 422 (1931). The glaring fault with Alexander & Bishop's argument is that it never informed Ash Park it was invoking the contingency and terminating the contract. Yet, even if we accepted Alexander & Bishop's contention that its verbal notice of its difficulties securing a tenant sufficiently invoked the contingency, there would be no question for a jury. The contract stated time was of the essence, and Alexander & Bishop failed to invoke the contingency prior to the deadline. Ash Park's mere willingness to consider a new deal prior to the scheduled closing did not constitute waiver of the time of the essence provision. The cases Alexander & Bishop cite involve situations where there was no express provision in the contract.

¶ 22. We next address whether summary judgment was inappropriate because Alexander & Bishop claimed Ash Park could not provide clear title at closing. Aside from arguing the title commitment failed to show that the Village of Ashwaubenon approved of the assignment of the option to purchase the adjacent

Bishop proposed two new agreements, both of which acknowledged it was bound by the reinstatement agreement and represented that the extension fee had been deposited. Alexander & Bishop first attempted to terminate the contract based on its failure to pay the extension fee on December 10, 2007, just four days prior to the scheduled closing.

property, Alexander & Bishop does not identify any problems with the title. The final title commitment issued on the day of closing did not note any requirement of Village approval. Further, the contract between the parties did not specify Ash Park was required to obtain any permission.

¶ 23. Alexander & Bishop's final assertion of a factual dispute is directed at the circuit court's failure to hear any testimony regarding Ash Park's mitigation of damages. This argument is based on Alexander & Bishop's contention that only monetary damages were available. We already concluded specific performance was an available remedy.

III. Motion for Reconsideration or Relief

¶ 24. Alexander & Bishop argues the circuit court erroneously exercised its discretion when it denied the motion for reconsideration or for relief under WIS. STAT. § 806.07. Alexander & Bishop argued the circuit court should revisit the judgment for specific performance because Alexander & Bishop discovered an existing lawsuit against Ash Park for alleged violations of an "easement with covenants and restrictions" on an adjacent property. Alexander & Bishop claimed the easement also benefitted the property it was ordered to purchase and that the violations decreased the property's value.

¶ 25. After holding two hearings and reviewing the parties' briefs, the circuit court determined the easement did not benefit the Ash Park property. Alexander & Bishop does not present any coherent argument claiming this determination was erroneous. Rather, Alexander & Bishop misrepresents the record

by asserting the court held Alexander & Bishop had no right to contest violations of the easement until after it closed on the property. Alexander & Bishop also argues, for the first time in its reply brief, there were encroachments onto the property entitling Alexander & Bishop to an offset for any reduction in the property's value. That argument is waived. *See A.O. Smith Corp. v. Allstate Ins. Cos.*, 222 Wis. 2d 475, 493, 588 N.W.2d 285 (Ct. App. 1998). Nonetheless, we observe Ash Park agreed in open court to remedy any encroachments.

IV. Award of Interest

¶ 26.   Finally, Alexander & Bishop claims the circuit court erred by awarding 5% prejudgment interest and 12% postjudgment interest on the full contract purchase price. It claims interest may only be awarded on money judgments, noting WIS. STAT. § 815.05(8) provides for interest upon "a judgment for the recovery of money." Alexander & Bishop also cites *Beacons Bowl, Inc. v. Wisconsin Electric Power Company*, 176 Wis. 2d 740, 776–77, 501 N.W.2d 788 (1993), which states prepetition interest is only appropriate on either liquidated damages or an amount that is reasonably determinable.

¶ 27.   We reject each of Alexander & Bishop's various attacks on the interest award. First, an action for specific performance is, essentially, an action for the purchase price, thus arguably falling within WIS. STAT. § 815.05(8). Second, we fail to see how the purchase price is not a reasonably determinable amount under *Beacons Bowl*. In fact, in *Estreen v. Bluhm*, 79 Wis. 2d 142, 158, 255 N.W.2d 473 (1977), the court referred to the purchase price in an action for specific performance as a "liquidated claim."

¶ 28. Regardless, it is clear interest may be awarded in an action for specific performance. Interest was awarded to the vendor in *Estreen*, where the court stated the "allowance of interest, in cases in equity, is a matter within the discretion of the court." *Id.* at 156 (citing *Haueter v. Budlow*, 256 Wis. 561, 572, 42 N.W.2d 261 (1950)). The court further explained that "[i]nterest is required for the purpose of compensating one to whom payment is due for the lack of the use of the money." *Id.* (citations omitted). The court then ordered interest at the current legal rate under Wis. Stat. § 138.04 (1977). *Estreen*, 79 Wis. 2d at 158. Similarly, the court also required interest paid to the vendor on the entire purchase price in *Buntrock v. Hoffman*, 178 Wis. 5, 17–18, 189 N.W. 572 (1922) (because "the plaintiff [was] deprived of a proper income on the amount of the purchase price[,] . . . it is but fair and equitable to charge the defendant with interest").

¶ 29. In both cases, the court recognized the purchaser was to receive a credit for any rents or profits accrued to the vendor while in possession of the property, *Estreen*, 79 Wis. 2d at 157, *Buntrock*, 178 Wis. at 18. Here, the court specifically addressed this issue and determined Ash Park derived no benefit from possession of the vacant land.

¶ 30. Alexander & Bishop further argues Ash Park was only entitled to interest actually accrued on the approximately $3 million mortgage held on the property, because this represents Ash Park's actual holding costs. This argument confuses interest awards with consequential damages. In fact, if anything, Alexander & Bishop's argument, relying on *Pleasure Time, Inc. v. Kuss*, 78 Wis. 2d 373, 254 N.W.2d 463 (1977), is detrimental to its position. *Pleasure Time* holds that

consequential damages due to a delay in performance may be awarded in addition to the remedy of specific performance. *Id.* at 384. A court "may award monetary compensation in addition to specific performance where necessary to effectuate full and complete relief, to place the injured party in the position it would have occupied had there been no breach . . . ." 25 RICHARD A. LORD, WILLISTON ON CONTRACTS § 67:32, at 294–95 (4th ed. 2002). Thus, the circuit court might have properly awarded Ash Park specific performance, interest on the unpaid purchase price, and damages for carrying costs such as accrued mortgage interest and real estate taxes.[5]

¶ 31.   Lastly, Alexander & Bishop argues the interest award is inequitable because Ash Park declined another offer to purchase, failing to mitigate its damages and increasing the amount subject to interest. This argument fails on two fronts. First, it is premised on the notion specific performance was not an available remedy. Second, it ignores the fact the lesser offer was submitted by Alexander & Bishop's builder and included a provision requiring Ash Park to dismiss the pending case against Alexander & Bishop, thus eliminating the possibility of obtaining a deficiency judgment.

*By the Court.*—Judgment and order affirmed.

---

[5] Ash Park has not cross-appealed or otherwise challenged the court's award.