## Helmholz, Respondent, vs. Greene, Appellant.

*January 12—February 8, 1921.*

*Brokers: Agent or principal: Vendor and purchaser: Qualified acceptance of offer: Right to withdraw offer: Return of deposit upon non-acceptance of offer: Statute of frauds: Necessity of giving notice of acceptance.*

1. Where a real-estate broker was offered $11,500 "for the farm of M.," and thereupon telegraphed M. that he had succeeded in interesting a client in the land who offered $9,000, and received a reply from M. directing him to accept the offer, the transaction was one in which the broker was acting as an agent and not one in which as a principal he was buying property from M. to sell to the purchaser.
2. The owner's acceptance of the offer specifying that the purchaser should satisfy the tenant, with whom he claimed to have only a tentative agreement, did not create a binding contract, the stipulation as to satisfying the tenant constituting a material condition.
3. Where the vendor signed a letter accepting the purchaser's offer, but did not send the letter until after he had received notice that the purchaser had withdrawn his offer, there was no binding contract within sec. 2304, Stats., requiring a contract relating to an interest in lands to be in writing.
4. The mere signing an acceptance of a written offer to buy land without communicating the acceptance to the vendor does not create a contract within the meaning of the statute of frauds.
5. A written offer to purchase land specifying that the proposition is subject to acceptance before a specified date, if not based on a consideration may be withdrawn at any time before acceptance.
6. Where the written offer to purchase specified that in the event of non-acceptance of the offer the amount paid was to be returned, the purchaser was entitled to such amount where there was no valid acceptance of the offer.

Appeal from a judgment of the circuit court for Milwaukee county: John J. Gregory, Circuit Judge. *Affirmed.*

Action to recover the sum of $1,000 with interest, which sum plaintiff handed to defendant accompanying an offer for the purchase of real estate and to apply thereon. Plaintiff claimed that the offer was withdrawn and not, therefore,

lawfully accepted. Defendant counterclaimed for $2,500, or $1,500 in addition to the $1,000 previously paid, as lost profits due to plaintiff's failure to perform the contract which defendant claims was formed by an acceptance of plaintiff's offer. Trial in the civil court of Milwaukee county without a jury resulted in a judgment for the defendant. On appeal to the circuit court the judgment was reversed and judgment entered for the plaintiff. From this judgment the defendant brings this appeal.

On February 5, 1919, appellant, a real-estate dealer with an office in the city of Milwaukee, came to respondent's office in one of the suburbs and had a personal interview with him concerning the purchase by respondent of a certain farm property in Milwaukee county belonging to one Meyer, who lived in New York. After some talk appellant dictated, and respondent signed, the following writing, which was thereupon delivered to appellant:

"Helmholz Mitten Co.
"Manufacturers of Leather Gloves and Mittens.
"Cudahy, Wis., Feb. 5, 1919.
"Mr. Nathanael Greene, Milwaukee, Wis.
"Dear Sir:
"I hereby offer you eleven thousand five hundred ($11,500) dollars cash for the farm of Mr. Louis Meyer, on the Green Tree road, Milwaukee county.

"I am inclosing herewith check of one thousand ($1,000) dollars, to your order, which you can use in closing the deal, provided I can buy it at that figure.

"This proposition is subject to acceptance to buy on or before February 24, 1919. In event of the non-acceptance of the proposition the $1,000 paid is to be returned.
"Very truly yours,
WRH/MC                    "W. R. Helmholz."

There is some dispute whether appellant represented that he was acting as Meyer's agent or whether it was contemplated by respondent that the contract was to be with appellant in person.

After delivery of the offer appellant sent Meyer a telegram reading as follows:

"Letter received; have succeeded in interesting client in entire nineteen acres, will pay nine thousand dollars, cash, deal to be closed March first; as another farm is in consideration please wire instructions immediately."

Appellant received the following telegram in reply:

"Accept nine thousand dollars cash, purchaser to pay commission and satisfy tenant with whom I have only tentative agreement."

In the meantime respondent had talked with appellant by telephone of withdrawing his offer, but had not done so. Appellant received the telegram from Meyer on the morning of February 7th and at once notified respondent by telephone that his offer was accepted. Thereafter he dictated and signed a letter of acceptance and handed the same to some member of his office force with directions that it be mailed to respondent.

In the late afternoon of February 7th there was delivered to appellant a letter from respondent purporting to withdraw his offer. About the same time—the trial judge found that it was shortly before the receipt of the letter of withdrawal, but all the evidence indicates that it was shortly after,—the appellant's letter of acceptance was mailed. It was not received by respondent, however, till a later day.

On February 8th appellant sent the following telegram to Meyer:

"Your telegram of acceptance received. Party has made substantial payment, and now wishes to withdraw. In the event he communicates with you direct, please ignore his communication but forward to me. Write you fully today.
                              "NATHANAEL GREENE."

For the appellant there was a brief by *Glicksman, Gold & Corrigan* of Milwaukee, and oral argument by *Walter L. Gold.*

For the respondent there was a brief by *Lines, Spooner &*

*Quarles,* attorneys, and *Rossiter Lines,* of counsel, all of Milwaukee; and the cause was argued orally by *Charles B. Quarles.*

JONES, J. It is claimed in behalf of appellant that this was a transaction in which he was buying the property from the owner and selling it to the respondent. The offer dictated by the appellant, taken alone, might give some color to this claim, but the telegrams and conduct of the parties interested lead us to a different conclusion. The two telegrams sent by appellant to the New York owner are clearly not such messages as a buyer acting for himself would send to an owner. They can bear no other fair construction than this: that appellant had found a client who was willing to buy. The telegram of the owner plainly indicates that he supposed that a third party was buying and that the buyer was to pay appellant's commission. The documentary evidence and the oral testimony lead us to the conclusion that appellant was acting as agent for the owner and that both the owner and the respondent so understood.

It is plain that the owner never subscribed any writing which can be construed as an acceptance of the offer. The only memorandum signed by him which could be regarded as having any approach to an acceptance of the offer of the respondent was conditional. It required the purchaser to satisfy the tenant, with whom he had only a tentative agreement. To satisfy a tenant who has heard all his life that possession is nine points of the law is not always an easy task, and this condition was a very material one.

Even if we were to adopt the theory that appellant was one principal and respondent the other and that there is no element of agency in the case, there is a fatal want of proof to support a judgment in appellant's favor. Sec. 2304, Stats., provides that:

"Every contract for the leasing for a longer period than one year or for the sale of any lands or any interest in land

shall be void unless the contract or some note or memorandum thereof, expressing the consideration, be in writing and be subscribed by the party by whom the lease or sale is to be made or by his lawfully authorized agent."

The offer to buy was made in writing when appellant and respondent were both present on February 5, 1919, and the telegram to the owner was sent on the same day. On February 6th respondent informed appellant that he was unwilling to go on with the deal, but did not expressly withdraw the offer. On the 7th the respondent sent by messenger a letter to appellant withdrawing the offer which was received by him about 5:15 p. m. After this letter was received appellant mailed a letter formally accepting the offer. It is claimed by appellant that he signed this letter, and that it was in existence before the offer was withdrawn, and that the bare *signing* of the notice and handing it to one of his office force before any mailing or delivery to the respondent was a compliance with the statute.

Appellant cites as authority for this contention *Thomas v. Sowards*, 25 Wis. 631; *Campbell v. Thomas*, 42 Wis. 437; and *Singleton v. Hill*, 91 Wis. 51, 64 N. W. 588. In the first of these cases it was held that the delivery of a deed of land in escrow to be delivered to the purchaser on performance of certain agreements on his part did not take an oral contract of sale out of the statute of frauds where the terms of the contract did not appear in the deed. In the second case the grantor deposited a deed with a third person with instructions to deliver to the grantee upon his compliance with certain conditions, but the grantor retained the right of control over the deed. This was held to be not an escrow. It was further held that the grantor did not lose control of the deed merely because its deposit was made in pursuance of a previous oral agreement between the parties for a sale of the land, although a small part of the agreed price was paid at the time of the agreement. In the third case above cited the owner of land had given his agent writ-

ten authority to sell certain lands for $175.   The agent
negotiated with a purchaser in regard to the sale and re-
ceived from him a letter making an offer of that amount.
The agent communicated this offer to the owner, who by a
letter to the agent accepted the offer and agreed to forward
the deed.   The agent communicated this acceptance to the
purchaser, who made a small payment and entered into
possession.   No claim was made that the land was not suffi-
ciently described or that there had been any attempt to
withdraw the offer.   It was held that the terms of the statute
of frauds were satisfied.   In this case the agent through
whom the negotiations were carried on was in some respects
acting for both parties, and it was properly held that an
acceptance given to him and transmitted to the other party
was binding.

We do not regard any of these cases as authority for the
proposition that the mere signing an acceptance of a written
offer to buy land without bringing it to the attention of the
vendor or to that of any one acting in his behalf creates a
binding contract within the meaning of the statute of frauds.
If in the instant case the letter of acceptance had been de-
livered to the respondent before appellant had received the
letter of withdrawal, or if the negotiations had been con-
ducted by mail and the appellant had mailed a letter of ac-
ceptance before the notice of withdrawal had been received,
very different questions would arise.

The claim of appellant would seem to lead to the result
that one to whom an offer is made may sign a memorandum
of acceptance, hold it in his possession or in the possession
of his agent, and at his option treat it as the closing of a
contract, or destroy it.   The original statute of frauds was
enacted "for prevention of many fraudulent practices, which
are commonly endeavored to be upheld by perjury and
subornation of perjury."   In seeking to observe the spirit
and meaning of the statute we feel bound to hold that even
if the appellant were to be treated as a principal and not as

an agent there was no valid acceptance of the respondent's offer.

It is urged by appellant's counsel that since the offer was by its terms subject to acceptance until February 24th it could not be withdrawn until that date. The offer was not under seal. There was no presumption of consideration. Unless there was an actual consideration it could be withdrawn before acceptance even during the time limited.  13 Corp. Jur. 293; *Johnson v. Filkington,* 39 Wis. 62.  But, it is claimed, the respondent knew that expense would be necessary to submit the offer to the owner.  There was ample time to transmit the offer by mail.  If in his anxiety to mislead the owner appellant chose to incur the expense of a telegram, we are not disposed, under all the circumstances of the case, to treat the slight expense incurred as sufficient consideration within the meaning of the rule.  The expense was so trifling that the maxim *De minimis non curat lex* applies.

It is claimed by appellant's counsel that in any event respondent cannot recover the $1,000 actually paid.  The offer contained this language: "In event of the non-acceptance of the proposition the $1,000 is to be returned."  Under our holding that there was no valid acceptance of the offer and that the agreement was void, it logically follows that respondent is entitled to a return of his money.  In *Brandeis v. Neustadtl,* 13 Wis. 142, where there was a parol contract for the purchase of land and part of the purchase money had been paid, Mr. Chief Justice Dixon said:

"The agreement being void, it is money paid or property delivered without any consideration whatever, from which the law implies a promise of repayment or redelivery, unless the transaction is interdicted by some rule of public policy or sound morals.  And I think it is not."

See, also, *Henrikson v. Henrikson,* 143 Wis. 314, 127 N. W. 962; *Carlock v. Johnson,* 165 Wis. 49, 160 N. W. 1053.

*By the Court.*—Judgment affirmed.