COURT OF APPEALS
DECISION
DATED AND FILED

August 17, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2022AP1773**

**STATE OF WISCONSIN**

Cir. Ct. No.  2022CV32

**IN COURT OF APPEALS
DISTRICT IV**

KEVIN FIESS AND AMY FIESS,

   PLAINTIFFS-RESPONDENTS,

 V.

RUSSELL L. KUHL,

   DEFENDANT-APPELLANT.

        APPEAL from a judgment of the circuit court for Waushara County: GUY D. DUTCHER, Judge.  *Affirmed*.

        Before Kloppenburg, P.J., Graham, and Nashold, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   The issue on appeal is when, if ever, the parties who signed an offer to sell property had a binding contract.  More specifically, the issue is whether Russell Kuhl had the option to withdraw an offer to sell property to Amy Fiess and Kevin Fiess (the "Fiesses"), after Kuhl signed the offer as the seller and emailed the offer with his signature to the Fiesses, and the Fiesses signed the offer as the buyers and emailed the offer with all of the parties' signatures to Kuhl.  The circuit court concluded that the language in the offer unambiguously provides that the contract between the parties is formed when a copy of the offer with the buyers' and seller's signatures is delivered to the buyers.  The court also concluded that, based on this language and the undisputed above-stated facts, Kuhl no longer had the option to withdraw the offer after the Fiesses signed the offer that Kuhl had signed and delivered.  The court further concluded that Kuhl breached the terms of the contract when he did not proceed with the sale.  Accordingly, the court entered summary judgment in favor of the Fiesses and ordered Kuhl to convey the property to the Fiesses according to the terms of the contract.

¶2    On appeal, Kuhl argues that the only reasonable plain language interpretation of the offer is that the offer's requirement—that the offer with all parties' signatures ("the signed offer") be delivered to the buyers in order to be binding—means that the signed offer be delivered to the seller.  Alternatively, Kuhl argues that, if the plain language interpretation of the offer requires that the signed offer be delivered to the buyer, then that interpretation:  (1) yields an absurd and unreasonable result and, therefore, the offer is latently ambiguous; and (2) violates the statute of frauds.

¶3    We conclude that the offer is not ambiguous because the only reasonable plain language interpretation of its terms is that both parties were bound upon the Fiesses signing the offer after Kuhl had signed and emailed it to the

Fiesses; that that result is not absurd or unreasonable; and that that result does not violate the statute of frauds. Kuhl does not argue that, if the offer was binding at that point, he did not breach the contract.[1] Accordingly, the Fiesses are entitled to summary judgment and we affirm the circuit court.

## BACKGROUND

¶4      The following facts are undisputed for purposes of summary judgment.

¶5      In February 2022, Russell Kuhl listed a property for sale on Facebook. Amy Fiess contacted Kuhl to express an interest in the property and the two discussed possible terms. After the conversation, Kuhl contacted an attorney to prepare an offer to sell the property to the Fiesses. The attorney prepared the offer using the standard form contract titled "WB-13 Vacant Land Offer to Purchase."[2]

¶6      The pertinent provisions of the offer are as follows.

¶7      There is an "Acceptance" provision that reads:

>        Acceptance occurs when all Buyers and Sellers have signed one copy of the Offer, or separate but identical copies of the Offer.

¶8      There is also a "Binding Acceptance" provision that reads:

>        This Offer is binding upon both Parties only if a copy of the accepted Offer is delivered to Buyer on or before

---

[1] Kuhl also does not challenge the circuit court's order of specific performance.

[2] *See* ***Ash Park, LLC v. Alexander & Bishop, Ltd.***, 2009 WI App 71, ¶6, 317 Wis. 2d 772, 767 N.W.2d 614, *aff'd*, 324 Wis. 2d 703, 783 N.W.2d 294 (2010) (referring to a WB-13 Vacant Land Offer to Purchase as a "Wisconsin Department of Regulation and Licensing's [now, the Department of Safety and Professional Services] standard form contract").

3

March 10, 2022 …. This Offer may be withdrawn prior to delivery of the accepted Offer.

¶9 The offer also contains a provision titled "Delivery of Documents and Written Notices," which provides that "delivery of documents and written notices to a Party shall be effective only when accomplished by one of the authorized methods specified." Under the provision for personal delivery, the offer states: "Name of Seller's Recipient for delivery, if any: Attorney Michael D. Greiber, Greiber Law, S.C." Under the provision for email delivery, the email address for the seller is listed as Attorney Greiber's email and the email address for the buyer is listed as Amy Fiess's email.

¶10 Kuhl's attorney prepared the offer, which Kuhl signed on March 8, 2022 and emailed to Amy Fiess the following day, March 9. His signature appears immediately below the following statements:

SELLER ACCEPTS THIS OFFER, THE WARRANTIES. REPRESENTATIONS AND CONVENANTS MADE IN THIS OFFER SURVIVE CLOSING AND THE CONVEYANCE OF THE PROPERTY. SELLER AGREES TO CONVEY THE PROPERTY ON THE TERMS AND CONDITIONS AS SET FORTH HEREIN AND ACKNOWLEDGES RECEIPT OF A COPY OF THIS OFFER.

The Fiesses signed the offer that Kuhl emailed them and emailed the signed offer to Kuhl and the designated title company, Schmitt Title, at 8:09 a.m. on March 10. Their signatures immediately precede the statements quoted above.

¶11 Between 8:09 a.m., when Kuhl received the signed offer from the Fiesses, and 11:30 a.m. on March 10, there was a telephone conversation between Kuhl and Amy Fiess, but the contents of that conversation are disputed. Kuhl contacted Schmitt Title at 11:30 a.m. on March 10 and told them that he had decided not to sell the property. Around 1:30 p.m. on March 10, the Fiesses emailed the

signed offer to Kuhl's attorney. On March 11, Kuhl again contacted Schmitt Title and instructed them not to process any paperwork regarding the property because he was not selling it. The March 21 closing date specified in the signed offer passed without the property being transferred to the Fiesses.

¶12 The Fiesses subsequently filed this action seeking a judgment ordering Kuhl to convey the property to them as required by the signed offer. The Fiesses also filed a motion for a temporary injunction, which the circuit court granted, "prohibiting any material alterations" to the property.

¶13 The Fiesses then moved for summary judgment, arguing that the signed offer is a binding contract from which Kuhl could not withdraw because all contractual conditions were satisfied once the Fiesses signed. Accordingly, they argued, Kuhl breached the contract and they are entitled to specific performance requiring that Kuhl complete the sale. Kuhl argued that he did not breach any contract because the signed offer became binding only upon delivery to the seller and he withdrew the offer before the signed offer was delivered to his attorney, who is designated in the signed offer as Kuhl's recipient for personal and email delivery.

¶14 The circuit court granted the motion for summary judgment. Following a hearing on the appropriate remedy, the court entered judgment in favor of the Fiesses and ordered Kuhl to convey the property to the Fiesses according to the terms in the signed offer.[3]

¶15 Kuhl appeals.

---

[3] The circuit court also stayed the order of conveyance pending appeal.

## DISCUSSION

### *Applicable Standard of Review and Legal Principles*

¶16    "Whether the circuit court properly granted summary judgment is a question of law that this court reviews de novo." ***Schmidt v. Northern States Power Co.***, 2007 WI 136, ¶24, 305 Wis. 2d 538, 742 N.W.2d 294.   Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   WIS. STAT. § 802.08(2) (2021-22).[4]   We view the summary judgment materials "in the light most favorable to the party opposing summary judgment."   ***United Concrete & Const., Inc. v. Red-D-Mix Concrete, Inc.***, 2013 WI 72, ¶12, 349 Wis. 2d 587, 836 N.W.2d 807.

¶17    At the outset, we observe that we are not construing a contract to ascertain the contracting parties' intent.   Rather, the issue in this case is whether there is a contract, which initially depends on the construction of the offer.   The method for construing that document is similar to that of construing a contract.   In other words, under the circumstances here, the principles of contract interpretation are also relevant to evaluating whether a contract has been formed.   Like the interpretation of an offer, the interpretation of a contract presents a question of law. ***Tufail v. Midwest Hosp., LLC***, 2013 WI 62, ¶22, 348 Wis. 2d 631, 833 N.W.2d 586.

---

[4] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶18 We apply the following principles of contract construction to our interpretation of the offer here. "The court's goal in interpreting a contract is to give effect to the parties' intentions." *Ash Park, LLC v. Alexander & Bishop, Ltd.*, 2015 WI 65, ¶34, 363 Wis. 2d 699, 866 N.W.2d 679 (citations omitted). "We presume the parties' intent is evidenced by the words they chose, if those words are unambiguous." *Tufail*, 348 Wis. 2d 631, ¶26; *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476 ("[T]he best indication of the parties' intent is the language of the contract itself."). The court's role in interpreting a contract "is not to make contracts or reform them but to determine what the parties contracted to do." *Ash Park*, 363 Wis. 2d 699, ¶38 (citation omitted).

¶19 "Where the terms of a contract are clear and unambiguous, we construe the contract according to its literal terms." *Tufail*, 348 Wis. 2d 631, ¶26. "Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent." *Town Bank*, 330 Wis. 2d 340, ¶33. In addition, "[a] contract, though clear on its face, may be considered latently ambiguous if its application produces absurd or unreasonable results that the parties could not have intended." *Id.*, ¶49.

*Analysis*

¶20 The parties agree as to the timeline for the drafting, signing, and emailing of the offer. To recap, that timeline is as follows. After discussing possible terms of the sale of the property with Amy Fiess, Kuhl asked his lawyer to draft an offer to sell. Kuhl's lawyer drafted the offer using the standard form contract titled WB-13 Vacant Land Offer to Purchase. Kuhl signed the offer as the seller on

March 8 and emailed the offer with his signature to the Fiesses on March 9. The Fiesses both signed the offer as the buyers on March 10 and emailed the signed offer, with all three signatures, to Kuhl and Schmitt Title at approximately 8:09 a.m. on March 10.

¶21 The parties disagree about whether they had a binding contract when the Fiesses added their signatures to the offer that they received from Kuhl which Kuhl had signed. Specifically, the Fiesses argue that the offer provides that, to be binding, the signed offer must be delivered to the buyers. They further argue that Kuhl, by emailing them the offer with his signature, assented both to the terms of the offer and to being bound by those terms upon the Fiesses signing the offer, because at that point the Fiesses, as the buyers, had received delivery of the signed offer. Kuhl, arguing the opposite, asserts that, to be binding, the signed offer must be delivered to the seller. Kuhl further asserts that he withdrew the offer before the Fiesses delivered the signed offer to his attorney, whom the offer designates as his recipient for such delivery. Therefore, he argues, he properly withdrew the offer before the parties had a binding contract. As we explain, we agree with the Fiesses.

¶22 The analysis turns on the following two provisions:

> ACCEPTANCE Acceptance occurs when all Buyers and Sellers have signed one copy of the Offer, or separate but identical copies of the Offer.

> BINDING ACCEPTANCE This Offer is binding upon both Parties only if a copy of the accepted Offer is delivered to Buyer on or before March 10, 2022 …. This Offer may be withdrawn prior to delivery of the accepted Offer.

¶23 The language in these two provisions is not ambiguous because it is not "susceptible to more than one reasonable interpretation." *Town Bank*, 330 Wis. 2d 340, ¶33. In these two provisions, the offer sets out a process for the offer

8

to be accepted—when it is signed by all buyers and sellers—and a process for the accepted offer to be binding—when it is delivered to the buyer. The part of the second provision stating that the offer may be withdrawn prior to delivery of the accepted offer follows the part of the provision requiring delivery to the buyer, specifically. This can only mean that the offer may be withdrawn prior to delivery of the accepted offer to the *buyer*.

¶24 Kuhl does not argue that there is any ambiguity as to the identity of the seller and the buyers. Indeed, the offer consistently identifies Kuhl as the seller and the Fiesses as the buyers. Nor does he argue that the language in the provisions setting out the processes of acceptance and binding acceptance is ambiguous. Rather, Kuhl argues that, because he signed the offer first, it is properly an offer to sell for the buyers then to accept, and it becomes binding when the buyers return it, with all of the parties' signatures, to the seller. In other words, Kuhl argues that the binding acceptance provision requires that the buyer deliver the signed offer to the seller, even though as written it requires the seller to deliver the signed offer to the buyer. Essentially, Kuhl argues that the offer creates rights and responsibilities in the reverse of what is written, requiring that we replace the word "buyer" in the binding acceptance provision with the word "seller." However, we lack authority to rewrite the offer agreed to by the parties in this manner.

¶25 When, as here, the language of the offer is unambiguous, our job is to use the plain language to determine what the parties agreed to do; it is not to make contracts or otherwise edit, fix, or rewrite the language that is present. ***Town Bank***, 330 Wis. 2d 340, ¶33; ***Tufail***, 348 Wis. 2d 631, ¶29. Kuhl's argument that we interpret the offer in the reverse, by changing the delivery requirement from "delivered to Buyer" to "delivered to Seller," is untenable and without support from legal authority. Kuhl argues that interpreting the offer in the reverse is consistent

with the parties' having referred to the deal as an "offer to sell" and the order in which they signed the offer. However, it is not the place of the court to substitute language, thereby creating wholly different rights and responsibilities for parties who signed the offer as written. Nor do we look to extrinsic evidence of what the parties may have said or done separate from the language they used in the document they signed. How the parties may have referred to the offer does not change the language of the document itself. Thus, we reject Kuhl's argument that a plain language interpretation of the offer requires that it be read in the reverse.

¶26    Applying a plain language interpretation of the terms to the undisputed facts here, the offer was accepted when first Kuhl signed it and then the Fiesses signed it upon receiving it from Kuhl. As a result, that accepted offer was binding when the Fiesses were in possession of the signed offer. In other words, Kuhl as the seller, by signing and delivering the offer after discussing the terms with the Fiesses as the buyers, was conveying his acceptance of those terms and that he would be bound once the Fiesses signed the offer he delivered to them. Thus, Kuhl delivered the offer with his signature having already accepted its terms, the offer was accepted when the Fiesses signed it, and the acceptance by both parties was binding because Kuhl had delivered his acceptance to the Fiesses.

¶27    Kuhl argues that interpreting the "delivered to buyer" offer provision as requiring delivery to the buyer leads to absurd and unreasonable results, rendering the offer latently ambiguous. *See Town Bank*, 330 Wis. 2d 340, ¶49 ("A contract, though clear on its face, may be considered latently ambiguous if its application produces absurd or unreasonable results that the parties could not have intended.").

¶28    As stated, the offer establishes methods of delivery, specifies that delivery is to be made to the buyer, and establishes the process for acceptance and

10

binding acceptance. Pursuant to that process, acceptance was completed when the Fiesses signed the offer, and that acceptance was binding because they had received and were presently in possession of a copy of the accepted offer at that time. Thus, the formation of the contract complied with the language of the offer.

¶29 While the process may be unusual, or not what Kuhl wanted in hindsight, it is not an absurd or unreasonable result. Kuhl does not persuade us that it is absurd or unreasonable for a seller to convey the seller's acceptance of the terms of an offer by signing that offer and delivering it to the buyers for them to make the offer binding by signing it as well. Kuhl retained the right to withdraw the offer before he signed and delivered it to the Fiesses or before the Fiesses signed it. He also, as noted by the Fiesses, could have delivered the offer unsigned to the Fiesses and asked that they sign it and deliver it to him for acceptance. Instead, he signed the offer accepting its terms and delivered the offer with his signature to the Fiesses, who signed it upon receiving it. It is neither absurd nor unreasonable to interpret the offer's language as making the accepted offer binding at that point.

¶30 Wisconsin courts have found absurd or unreasonable results from a plain language interpretation in situations in which substantive provisions cannot be met. *See, e.g.*, *Stevens Const. Corp. v. Carolina Corp.*, 63 Wis. 2d 342, 355, 217 N.W.2d 291 (1974) (ruling that a provision requiring a contractor to "furnish and install all ... precast basement beams" resulted in "a patently ridiculous situation [because] the contractor is to furnish undesigned precast beams knowing the contractor's architect had no designing experience" (quoted source omitted)); *Chapman v. B.C. Ziegler & Co.*, 2013 WI App 127, ¶11, 351 Wis. 2d 123, 839 N.W.2d 425 (finding absurd or unreasonable results when an employer was "to pay a person an 'incentive compensation' that was 'earned' even though that person did nothing to earn that 'incentive compensation'"); *Gilbert v. Geiger*, 2008 WI App

29, ¶2, 307 Wis. 2d 463, 747 N.W.2d 188 (finding latent ambiguity where the location of a boundary marker described in a warranty deed "does not match the location of an existing physical marker both deeds reference").

¶31 The facts of these cases are dissimilar to the situation here, which concerns the process for formation of the contract. Indeed, the process used by the parties here may be unusual, but it preserves the parties' substantive rights to accept or reject the offer's terms before all parties have signed the offer. Nevertheless, Kuhl argues that our plain language interpretation yields certain absurd or unreasonable results in the following respects, each of which we next address and reject.

¶32 Kuhl argues that applying our plain language interpretation to reach this result renders provisions specifying the methods for delivery meaningless. Those provisions specify that delivery to Kuhl is achieved through personal or email delivery to his attorney, and that delivery to the Fiesses is achieved through email delivery to Amy Fiess. Kuhl used the specified method to deliver the offer with his signature to the Fiesses. That the process he initiated resulted in the Fiesses not having to make a delivery back to Kuhl to form the contract does not make the part of the delivery provisions specifying the delivery method to Kuhl meaningless. It merely does not apply under the process that Kuhl initiated. Had Kuhl sent the Fiess an *unsigned* offer, the provisions regarding delivery to Kuhl could be of consequence.

¶33 Kuhl argues that delivery of the offer "cannot precede acceptance" or "occur simultaneously with acceptance, through the sole act of the buyers signing it." However, delivery under the undisputed facts here occurred through the acts of both parties: namely, Kuhl's act of conveying his acceptance of its terms by signing

it and delivering it with his signature to the Fiesses, and their act in completing the delivery by signing it. When the Fiesses signed the offer containing Kuhl's signature, which they had received from Kuhl, all of the requirements for a binding acceptance were met: signatures by all parties and delivery to the buyer.

¶34 Kuhl argues that he "could not have accepted his *own*" offer to sell. However, the only legal authority that he cites does not support this argument. He cites language from *Schwegel v. Milwaukee County*, 2015 WI 12, ¶40, 360 Wis. 2d 654, 859 N.W.2d 78, stating that, "A bilateral contract arises when the promisee accepts the offer by performing the acts requested by the promisor." Here, the bilateral contract did not arise when Kuhl accepted the terms in his offer to sell; rather, as provided in the offer, the bilateral contract arose when the Fiesses also accepted those terms.

¶35 Separately, and finally, Kuhl argues that our plain language interpretation of the offer violates the Statute of Frauds. The Statute of Frauds, with its origin in the common law and codified in WIS. STAT. § 706.01-.02, requires that certain transactions, including transactions for the sale of land, satisfy a set of criteria to be valid. *Nelson v. Albrechtson*, 93 Wis. 2d 552, 556, 287 N.W.2d 811 (1980). These criteria, in brief, are that the transaction be evidenced by a conveyance that identifies the parties, land, and interest conveyed, is signed by or on behalf of the parties, and is delivered. *See* § 706.02(a)-(g). Kuhl argues that, under our plain language interpretation, the offer does not meet the delivery requirement, because it would allow the Fiesses to hold the signed offer without returning it to Kuhl. However, the case that Kuhl cites in support of his argument, *Helmholz v. Greene*, 173 Wis. 306, 311, 181 N.W. 221 (1921), is readily distinguished.

¶36 In *Helmholz* the court rejected the proposition that "the mere signing an acceptance of a written offer to buy land, without bringing it to the attention of the vendor or to that of any one acting in his behalf, creates a binding contract within the meaning of the statute of frauds." *Helmholz*, 173 Wis. at 311. Unlike in *Helmholz*, here the Fiesses signed an acceptance of an offer to sell signed by Kuhl. The terms that the Fiesses accepted had already been accepted by Kuhl, and Amy Fiess brought the completed contract containing those terms to Kuhl's attention when she emailed it to him and Schmitt Title. The delivery required to make the acceptance binding had already occurred when Kuhl emailed the offer with his signature to the Fiesses and the Fiesses signed that offer upon delivery. A seller may deliver a signed contract—with the seller's signature serving as the seller's acceptance of the proposed terms—that allows the buyer to bind the seller by accepting the seller's terms.[5] Nothing in the statute of frauds prohibits this.

## CONCLUSION

¶37 For the reasons stated, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] Kuhl also argues that extrinsic evidence establishes that the parties intended to reverse their roles in the contract, and that summary judgment is inappropriate because there are factual disputes regarding what occurred after the Fiesses signed the offer containing Kuhl's signature, which Kuhl had emailed them. We do not address these arguments in light of our conclusions that the offer is not ambiguous, *see* *Town Bank v. City Real Estate Development, LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476 (when a contract is not ambiguous the court does not consider extrinsic evidence of the parties' intent), and that the parties formed a contract upon the Fiesses signing the offer that Kuhl had signed and emailed them.